914 So.2d 1225 (2005)
John Kenneth SENSENEY, Jr. and Karen Senseney, Appellants,
v.
MISSISSIPPI POWER COMPANY and John Martin, Appellees.
No. 2004-CA-00401-COA.
Court of Appeals of Mississippi.
November 1, 2005.
*1226 Carol L. Henderson, Gulfport, attorney for appellants.
Armin J. Moeller, Jr., Jackson, Ernest Russell Turner, attorneys for appellees.
EN BANC.
CHANDLER, J., for the Court.
¶ 1. John Kenneth Senseney, Jr. sued his former employer, Mississippi Power Company, and his former supervisor, John Martin, alleging wrongful discharge and intentional infliction of emotional distress. Senseney's wife, Karen Senseney, asserted a loss of consortium claim based upon the allegedly wrongful termination. The Circuit Court of Harrison County found that Senseney was an employee-at-will and granted summary judgment to Mississippi Power and Martin. The Senseneys appeal, arguing that summary judgment was improper because an employment contract could have arisen from Mississippi Power's corporate guidelines.
¶ 2. We find no error and affirm.

FACTS
¶ 3. On December 10, 1997, John Senseney submitted his application for employment with Mississippi Power. The application stated, in pertinent part:
4. No obligation to hire/Employment At Will. I understand that completion of this application does not indicate whether there are any positions currently open nor does it obligate Southern Company to hire me. I also understand and agree that nothing in this employment application, in the Company's policy statements, personnel guidelines or employee handbook is intended to create an offer of employment and compensation with the Company or an employment contract between the Company and me. I understand and agree that employment with the Company will be on an at-will basis, meaning that my employment will be for no definite duration and can be terminated, with or without cause and with or without prior notice, at any time, at the option of either the Company or myself. Further, I understand that, except for an officer of the Company, no supervisor or manager may alter or amend my at will employment status and only an officer, of the Company has the authority to enter into any agreement for employment for a specified period of time and any such agreement must be in writing and executed by the Company and me. My signature below certifies that I understand that the foregoing is the sole and entire understanding between the Company and me concerning the duration of my employment and the circumstances under which my employment may be terminated and supercedes all prior arrangements, understandings and representations concerning my employment with the Company.
Senseney admitted that he read this language in the employment application before signing it. On January 5, 1998, Mississippi Power hired Senseney as a full-time employee with the job title of engineer.
¶ 4. At some point, Senseney received a copy of Mississippi Power's corporate guidelines for progressive employee discipline. These guidelines stated:
PROGRESSIVE DISCIPLINE 3.9.1

*1227 This guideline advises management when discipline is appropriate and establishes the procedure and documentation required when discipline is necessary. For specific categories of misconduct requiring discipline, refer to Corporate Guideline 3.9 Employee Work Rules and Code of Conduct.
APPLICABILITY
This guideline is for use by all levels of management and must be applied uniformly to all employees when discipline is appropriate.
It is the responsibility of management to provide a safe, orderly and efficient working environment for all employees. To accomplish this objective, disciplinary action sometimes becomes necessary. When this occurs, the supervisor must have a clear concept of what is fair and consistent treatment, and disciplinary action taken should be appropriate for the severity of the offense. To achieve this, a progressive discipline concept has been adopted as the approved approach by supervisors.
Discipline should be progressive in nature, allowing the employee ample opportunity to correct the offense or problem. Specific actions that can be taken range from counseling sessions, to administrative warnings, to mandatory day off, to suspensions, to discharge. It is the supervisor's responsibility to choose which action best fits the situation keeping in mind that the intent is to correct by appropriate action and counseling. While the progressive discipline concept should be the basic guide for action taken, there will be situations where the seriousness of an offense or problem is such that progressive discipline is inappropriate and would not achieve the results desired. In such cases, employees should be sent home immediately pending further investigation and if later determined appropriate, discharged, but these must be discussed with the Employee Relations Section of the External Affairs and Corporate Services Department for consistency of application before this extreme action is taken.
¶ 5. The guidelines then list several factors which, when relevant, should be considered in evaluating whether discipline is warranted, such as the employee's disciplinary record and the disciplinary action applied to other employees for identical misconduct. The guidelines also provide factors for evaluating the type of discipline that should be applied to the situation at hand, such as the seriousness of the offense, the consequences of the offense occurring again, and the employee's record. Then, the guidelines describe the specific forms of disciplinary action and the documentation required for each. For discharge, the guidelines state, in pertinent part:
DISCHARGE
This action is also available to the supervisor when it is obvious that an offense or problem cannot be corrected, or when the nature of the situation justifies discharge. To get the employee off of the Company's property, he/she should be suspended pending the outcome of further investigation. Discharge without prior warning is normally appropriate only for serious violations as set forth in Corporate Guideline 3.9 Employee Work Rules and Code of Conduct. Routinely, offenses or problems involving absenteeism or poor work performance do not justify discharge without prior warning.
Prior to exercising this disciplinary option, the supervisor must review the nature of the offense or problem and the documentation of previous warnings with his or her supervisor and Employee Relations. Discharge can only be exercised *1228 with the concurrence of Employee Relations.
A report of Disciplinary Action is required to document pertinent information or facts presented during the discharge discussion that was not previously documented. The original should be sent to the Employee Relations Department and a copy maintained by the supervisor. The provisions of discharge must conform to Corporate Guidelines 3.8 Payroll, concerning termination or leave of absence.
¶ 6. On June 23, 2000, Senseney met with his supervisor, John Martin, at a restaurant. Martin notified Senseney that he was going to be terminated for unsatisfactory performance and that he should look for another job. Prior to this meeting, Mississippi Power had not given Senseney any documented warnings or subjected him to any disciplinary action concerning his job performance. Though the specific problem that prompted Senseney's termination is not apparent, the record indicates that it concerned some type of conflict between Senseney and several Mississippi Power marketing representatives. On August 18, 2000, Martin summoned Senseney to his office and informed him that his employment was being terminated. Mississippi Power's records show that Senseney was terminated on August 19, 2000, and that he received four weeks' separation pay in addition to the regular pay that had accrued at the time of his termination.

STANDARD OF REVIEW
¶ 7. This Court reviews the lower court's grant of summary judgment de novo. Byrd v. Imperial Palace of Miss., 807 So.2d 433, 434(¶ 4) (Miss.2001). We will affirm if the pleadings, depositions, answers to interrogatories, admissions on file and any affidavits show that there is no genuine issue of material fact and that the moving party was entitled to a judgment as a matter of law. M.R.C.P. 56(c). In conducting this review, we view the evidence in the light most favorable to the non-movant. Lee v. Golden Triangle Planning & Dev. Dist., Inc., 797 So.2d 845, 847(¶ 5) (Miss.2001).

LAW AND ANALYSIS

I. DID THE CIRCUIT COURT ERR IN GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT?
¶ 8. Mississippi adheres to the common law doctrine of employment-at-will. Kelly v. Miss. Valley Gas Co., 397 So.2d 874, 874 (Miss.1981). Pursuant to this doctrine, either the employer or the employee may terminate the employment relationship at-will unless the parties are bound by an employment contract or a contract providing for a term of employment. Perry v. Sears, Roebuck & Co., 508 So.2d 1086, 1088 (Miss.1987). It has been recognized that this doctrine means that an employer may terminate an employee at any time for a good reason, a wrong reason, or no reason at all. McCrory v. Wal-Mart Stores, Inc., 755 So.2d 1141, 1142(¶ 6) (Miss.Ct.App.1999).
¶ 9. The doctrine of employment-at-will has been abrogated in two situations. In McArn v. Allied Bruce-Terminix Co., 626 So.2d 603, 607 (Miss.1993), the court established a public policy exception to the doctrine, allowing an employee fired for refusing to follow the employer's directive to do illegal activity or for exposing illegal activity in the workplace to bring a wrongful termination action. And, in Bobbitt v. The Orchard, Ltd., 603 So.2d 356, 357 (Miss. 1992), the court held that
when an employer publishes and disseminates to its employees a manual setting *1229 forth the proceedings which will be followed in event of an employee's infraction of rules, and there is nothing in the employment contract to the contrary, then the employer will be required to follow its own manual in disciplining or discharging employees for infractions or misconduct specifically covered by the manual.
Under Bobbitt, an employer may alter an employee's at-will status by establishing a specific disciplinary scheme in an employee manual which it publishes to its employees. Id. However, Bobbitt approved of precedent holding that, if the employee manual contains an express disclaimer stating that nothing in the manual affects the employer's right to terminate the employee, then the employee's at-will status remains intact. Id. at 362 (citing Perry, 508 So.2d at 1089).
¶ 10. Senseney does not dispute that he was hired as an employee-at-will. Relying upon Bobbitt, Senseney argues that Mississippi Power's publication of its corporate guidelines altered his employment status by contractually obligating Mississippi Power to abide by the guidelines in terminating him. He argues that Mississippi Power breached the contract with him because it neither warned nor counseled him before his termination. Mississippi Power avers that the disclaimer in Senseney's employment application effectively prevented any alteration of Senseney's at-will status.
¶ 11. The disclaimer in Senseney's employment application unambiguously stated that the prospective employee agreed that employment with Mississippi Power was on an at-will basis and that nothing in the company's personnel guidelines or employee handbook was intended to create an employment contract. Senseney admitted that he read this language before signing the application. He acknowledges that, had the disclaimer appeared in the corporate guidelines, then Mississippi Power would have effectively maintained his at-will status. Perry, 508 So.2d at 1089. Senseney argues that, because the disclaimer was not contained within the corporate guidelines, the disclaimer did not prevent a contract of employment from arising from the guidelines.
¶ 12. We disagree. Though the disclaimer appeared in Senseney's employment application and not within the corporate guidelines, the disclaimer expressly placed Senseney on notice that nothing in the corporate guidelines or in any employee handbook was intended to create an employment contract, and that his employment was to be on an at-will basis. Solomon v. Walgreen Co., 975 F.2d 1086, 1090 (5th Cir.1992). At the time that Senseney read the corporate guidelines, he had already read and signed the application in which he agreed that the guidelines would not change his at-will employment status. Therefore, Mississippi Power retained the right to discharge Senseney at-will. Id.
¶ 13. We make an additional observation on a matter not addressed by the parties. We have previously found that, if an employee handbook does not provide exclusive permissible grounds for discharge, it is unreasonable for an employee to believe that he may be terminated only for cause. McCrory, 755 So.2d at 1145(¶ 17) (quoting Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir.1986)). Mississippi Power's guidelines concerning discharge and other forms of employee discipline speak in permissive terms of what a manager "should" do and suggest factors that should be taken into consideration. The guidelines state that discharge without warning is "normally appropriate" *1230 for only certain unlisted serious offenses.[1] Thus, the guidelines do not purport to create a mandatory employee discipline scheme. The language of the corporate guidelines could not have led Senseney to reasonably believe that Mississippi Power was contractually bound to warn or counsel him prior to discharge. Id.
¶ 14. Though Senseney makes no appellate arguments pertaining to his claim for intentional infliction of emotional distress, we conclude that summary judgment was appropriate upon that claim as well. To prove a claim of intentional infliction of emotional distress, a plaintiff must show that the defendant's conduct was extreme and outrageous, going beyond all possible bounds of decency. Brown v. Inter-City Fed. Bank for Sav., 738 So.2d 262, 264(¶ 9) (Miss.Ct.App.1999). Ordinarily, a plaintiff cannot recover for intentional infliction of emotional distress arising from "mere employment disputes." Id. at 265(¶ 9).
¶ 15. Senseney alleged that the conduct of Mississippi Power and of his supervisor, Martin, in firing him in derogation of the corporate guidelines was extreme and outrageous, causing him to suffer emotional distress. Senseney did not claim that any outrageous acts accompanied the discharge. As we have established, Mississippi Power had the legal right to terminate Senseney at any time and for any reason. Liability for intentional infliction of emotional distress will not be imposed upon an actor doing no more than exercising his legal rights. Reid, 790 F.2d at 462; see also Cothern v. Vickers, Inc., 759 So.2d 1241 (Miss.2000) (finding that, since Vickers was within its right to demote Cothern and had not committed accompanying aggravating acts, summary judgment was appropriately granted upon Cothern's intentional infliction of emotional distress claim).
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] The guidelines indicate that offenses for which discharge without warning is normally appropriate are listed in a separate document. Senseney did not present that document to the lower court. Consequently, this Court has no way of discerning whether or not the offense for which Senseney was discharged was one of those for which discharge without warning is normally appropriate.