989 So.2d 351 (2008)
Lewis DeCARLO
v.
BONUS STORES, INC. d/b/a Bill's Dollar Stores, Inc., Jimmy A. Schafer and William Fields.
No. 2007-FC-02287-SCT.
Supreme Court of Mississippi.
July 17, 2008.
Nancy Allen Wegener, Clarksdale, Jim Waide, Tupelo, attorneys for appellant.
*352 Timothy W. Lindsay, Ridgeland, Kenneth E. Milam, Walter J. Brand, Amy C. Felder, Jackson, attorneys for appellees.
EN BANC.
CARLSON, Justice, for the Court.
¶ 1. Pursuant to Mississippi Rule of Appellate Procedure 20, we have before us today the following certified questions from the United States Court of Appeals for the Fifth Circuit: "Whether the laws of Mississippi permit a retaliatory discharge claim for discharge in retaliation for reporting a co-employee's illegal acts that relate to the employer's business? If the previous question is resolved in favor of the plaintiff-appellant: whether the laws of Mississippi allow for individual liability for the tort of retaliatory discharge even if the individual defendant's participation in the discharge was in the course and scope of his employment?" DeCarlo v. Bonus Stores, Inc., 512 F.3d 173, 177 (5th Cir. 2007). Exercising our discretion pursuant to Mississippi Rule of Appellate Procedure 20(a), we render today's opinion, addressing these questions and answering the first question in the affirmative and the second question in the negative.

FACTS AND PROCEEDINGS IN THE FEDERAL DISTRICT COURT[1]
¶ 2. On January 10, 2003, Lewis DeCarlo filed a complaint in the United States District Court for the Southern District of Mississippi against various defendants, including Bonus Stores, Inc., d/b/a Bill's Dollar Stores, Inc., William Fields and Jimmy Schafer. Today's discussion, thankfully, does not require us to name all the corporate entities involved in this litigation, including corporations in the state of Delaware and the country of Iceland. DeCarlo was an employee of Bonus Stores, Inc. (Bonus), serving as its vice president of store operations from October 8, 2001, until he was terminated on May 31, 2002. During the period of time relevant to today's discussion, Jimmy Schafer was the president and chief executive officer of Bonus, which was headquartered in Columbia, Mississippi, having previously served as CEO of Bonus Stores of Florida, Inc. (Bonus Florida). Bonus was formed as a Delaware corporation in order to purchase Bill's Dollar Stores out of bankruptcy. While Schafer was serving as CEO of Bonus Florida, he started another company known as Retail Services, Inc. (Retail Services), in which he owned a fifty-percent interest, for the purpose of buying old fixtures from Wal-Mart and then refurbishing and selling them to Bonus Florida. Once Schafer moved to Mississippi to serve as CEO of Bonus, Retail Services continued the same business by selling the refurbished fixtures to Bonus.
¶ 3. In April 2002 after Schafer expressed concerns about Bonus's profitability, DeCarlo commenced an investigation in an effort to determine the reasons for the disappointing profit and loss statements; however, at the time he commenced this investigation, DeCarlo was unaware of the existence of the relationship between Retail Services and Bonus, as well as Schafer's involvement with Retail Services. Not surprisingly, during the course of his investigation, DeCarlo learned of the relationship between Bonus and Retail Services and Schafer's connection with Retail Services. Also, DeCarlo's investigation raised suspicions that Retail Services may have been billing Bonus for fixtures which were never delivered. DeCarlo reported his findings to Guy Heyl, Bonus's chief financial officer and secretary to the board of directors. According to DeCarlo, after *353 he reported his findings, Heyl told him to "lay low" and that he (Heyl) would investigate the matter further. DeCarlo asserts that immediately after reporting to Heyl, he was subjected to repeated harassment and retaliation by Bonus, through the actions of Schafer. DeCarlo likewise claims that he reported Schafer's conduct to several board members in May 2002, and that on May 31, 2002, Schafer, at the direction of Bonus's board of directors, terminated DeCarlo's employment with Bonus. DeCarlo further asserts that after his termination, he was subjected to harassment by William Fields, a member of Bonus's Board of Directors, in that Fields tried through intimidation to force DeCarlo to settle his employment issues, failing which he (Fields) threatened to interfere with DeCarlo's future attempts to secure employment.[2]
¶ 4. In due course, the United States District Court for the Southern District of Mississippi, Judge Keith Starrett presiding, was confronted with separate motions for summary judgment filed by Bonus, Schafer, and Fields. DeCarlo v. Bonus Stores, Inc., 2006 WL 1328890 at *7, 2006 U.S. Dist. LEXIS 47132, *6 (S.D.Miss. May 12, 2006). After discussing Mississippi's employment-at-will doctrine, and this Court's decision in McArn v. Allied Bruce-Terminix Co., Inc., 626 So.2d 603, 607 (Miss.1993) (carving out exceptions to our employment-at-will law where an employee is terminated for refusing to participate in an illegal act or for reporting the employer's illegal acts to the employer or anyone else), the district court found that while Schafer's suspicious activities, as described by DeCarlo and if proven, amounted to illegal activity, the McArn exceptions applied only to reporting illegal acts of the employer as opposed to illegal acts "of a co-employee, not attributable to the employer." (DeCarlo v. Bonus Stores, Inc., 2006 WL 1328890 at *6, 2006 U.S. Dist. LEXIS 47132, **10-12, **15-16).
¶ 5. Thus, the district court granted the separate motions for summary judgment of Bonus, Schafer, and Fields and entered a final judgment dismissing DeCarlo's complaint with prejudice. Id. at *7, 2006 U.S. Dist. LEXIS 47132, *20. Aggrieved by the district court's judgment of dismissal, DeCarlo appealed to the United States Court of Appeals for the Fifth Circuit.

PROCEEDINGS IN THE FIFTH CIRCUIT COURT OF APPEALS
¶ 6. DeCarlo argued before the Fifth Circuit Court of Appeals, and that court agreed, that absent from the district court's analysis of the issues was discussion of this Court's decisions in Willard v. Paracelsus Health Care Corp., 681 So.2d 539 (Miss.1996) (Willard I), and Paracelsus Health Care Corp. v. Willard, 754 So.2d 437 (Miss.1999) (Willard II), which "arguably extends McArn to a factual situation very similar to this case: a suit against both the company and the individual supervisor over the alleged retaliatory termination for reporting illegal activities." DeCarlo v. Bonus Stores, Inc., 512 F.3d 173, 175 (5th Cir.2007). In discussing, inter alia, Willard I and Willard II, as well as McCrory v. Wal Mart Stores, Inc., 755 So.2d 1141 (Miss.Ct.App.1999); Brandon v. Claiborne County, 828 So.2d 202 (Miss. Ct.App.2001); Senseney v. Mississippi Power Co., 914 So.2d 1225 (Miss.Ct.App. 2005); and Jones v. Fluor Daniel Services *354 Corp., 959 So.2d 1044 (Miss.2007); the Fifth Circuit Court of Appeals concluded that McArn arguably could protect an employee such as DeCarlo. DeCarlo, 512 F.3d at 176.[3]
¶ 7. The Fifth Circuit likewise determined that there remained a second issue concerning individual liability for the tort of retaliatory discharge, since no Mississippi court had addressed whether the employment-at-will doctrine "bars action against individual defendants who participate in the retaliatory decision to terminate an employee within the course and scope of their employment." Id. In a footnote, the Fifth Circuit stated that DeCarlo conceded that Schafer was acting within the scope and course of his employment as Bonus's CEO when he terminated DeCarlo. Id. n. 1. Finding a split in authority in other jurisdictions on this issue, and concluding that this Court had not directly addressed this issue, the Fifth Circuit likewise certified this second question of individual liability of defendants on these facts. Id. at 176-77.
¶ 8. We thus proceed to discuss both questions as certified by the United States Court of Appeals for the Fifth Circuit.

DISCUSSION

CERTIFIED QUESTION NUMBER ONE

DO THE LAWS OF MISSISSIPPI PERMIT A RETALIATORY DISCHARGE CLAIM FOR DISCHARGE IN RETALIATION FOR REPORTING A CO-EMPLOYEE'S ILLEGAL ACTS THAT RELATE TO THE EMPLOYER'S BUSINESS?
¶ 9. To answer this first certified question, we must begin our discussion by looking to our prior cases in this particular area of employment law.
¶ 10. Mississippi is an employment-at-will state to the extent that we follow the common-law rule that one who is under a contract of employment for an indefinite term may quit or may be terminated at the will of the employer, thus meaning that "either the employer or the employee may have a good reason, a wrong reason, or no reason for terminating the employment contract." Kelly v. Miss. Valley Gas Co., 397 So.2d 874, 875 (Miss.1981) (citing Montgomery Ward & Co. v. Skinner, 200 Miss. 44, 25 So.2d 572 (1946); Rape v. Mobile and O.R.R. Co., 136 Miss. 38, 100 So. 585 (1924); Butler v. Smith & Tharpe, 35 Miss. 457 (1858)). However, in Shaw v. Burchfield, 481 So.2d 247 (Miss.1985), an agency manager for a major insurance company was terminated without cause on less than three weeks' notice, and this Court expressed concern over the perceived harshness of our rule that "an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all." Id. at 254. This fact was noted by the United States District Court for the Northern District of Mississippi in Laws v. Aetna Finance Co., 667 F.Supp. 342 (N.D.Miss.1987), when Judge Glen H. Davidson, in a memorandum opinion, denied the defendants' motions for summary judgment by venturing an "Erie-bound guess"[4] in favor of hearing at trial the merits of the plaintiff's complaint alleging that he was terminated for his refusal to participate in "unsavory and possibly illegal business practices on the part of his *355 employer."[5]Laws, 667 F.Supp. at 344. After discussing this Court's decisions in Kelly and Shaw, Judge Davidson reasoned that this Court might be sending a "signal that the Mississippi court is leaving the possibility of amending the termination at will rule open for a suitable case in which to modify the harsh and unequivocal nature of the rule." Id. at 346. In sum, after discussing the then-most-recent pronouncement from this Court in Perry v. Sears, Roebuck & Co., 508 So.2d 1086 (Miss.1987),[6] Judge Davidson opined that this Court "would view the case sub judice, where an employee at will has allegedly been discharged for refusal to commit illegal acts on behalf of his employer, as an appropriate situation in which to create a narrow public policy exception to the termination at will rule."
¶ 11. This brings us to a pivotal case, decided approximately six years after Judge Davidson's prophetic Erie-guess in Laws. In McArn v. Allied Bruce-Terminix Co., Inc., 626 So.2d 603 (Miss.1993), this Court carved out two exceptions to our employment-at-will doctrine. McArn, an employee of a pest control company, filed a wrongful-discharge suit in state court, alleging, inter alia, that he had been terminated by his employer because he eventually refused to continue the branch manager-mandated practice of falsifying chemical reports to the state agricultural department and applying inadequate chemical treatment to customer facilities. Id. at 604-605. According to McArn, the pest control company branch manager who had required him to commit these acts fired McArn upon learning that he (McArn) had reported these illegal activities to the employer. Id. at 605. In McArn, we discussed, inter alia, the federal district court decision in Laws and carved out the now-familiar exceptions to our employment-at-will doctrine, whether there is a written contract or not, as follows: "(1) an employee who refuses to participate in an illegal act as in Laws shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." Id. at 607. This Court likewise stated that "[w]e leave for another day the question of whether or not such conduct by the employer, if found, is in bad faith or an independent tort giving rise to punitive damages." Id. at 608.
¶ 12. Prior to this Court's decision in McArn, Carolyn Willard and Bettie Sue Sumner were litigating their wrongful-discharge cases in separate actions in the trial courts. See Willard v. Paracelsus Health Care Corp., 681 So.2d 539 (Miss. 1996) (Willard I). Willard and Sumner had separate trials presided over by different trial judges in the Circuit Court of Tate County. Willard and Sumner, both employees of Senatobia Community Hospital, a wholly-owned subsidiary of Paracelsus *356 Health Corporation, asserted that they were fired by the local hospital administrator for being whistle-blowers by reporting to Paracelsus the fact that the hospital administrator was falsifying expense vouchers and forging signatures to checks for alleged reimbursement of expenses. Id. at 540-41. At the time of the separate trials for Willard and Sumner, this Court had not yet decided McArn. The trial judge in Willard's trial and the trial judge in Sumner's trial, without the benefit of the yet-to-be-decided McArn, refused to instruct the juries in these two trials on retaliatory discharge and punitive damages relating to retaliatory discharge or tortious breach of contract. Id. at 541. In answer to special interrogatories, the Willard jury and the Sumner jury found that the discharge of Willard and Sumner, respectively, was in violation of their contracts with the hospital when considered in conjunction with the personnel and procedure policy manual, and the jury returned a verdict of $10,000 in favor of Willard and against Paracelsus, and a verdict of $35,102 in favor of Sumner and against Paracelsus. Id. at 540.
¶ 13. In the consolidated appeal of both cases, with McArn having been decided subsequent to the Willard and Sumner trials, this Court retroactively applied McArn and remanded these cases for a retrial, stating:
Today, we answer in the affirmative the question of whether such conduct, if found, is an independent tort giving rise to punitive damages. The public has a legitimate interest in seeing that people are not discharged for reporting illegal acts or not participating in illegal acts which may result in harm to the public interest. Anyone who terminates an employee for such reasons should be allowed a jury instruction on the issue of punitive damages in order to deter similar future conduct. Discharge in retaliation for an employee's good faith effort to protect the employer from wrongdoing constitutes an independent tort and may support punitive damages.
However, a violation of the public policy exception to the employment at-will doctrine does not per se create a jury issue on the award of punitive damages. It will remain within the purview of the trial court to determine whether this issue should be submitted to the jury. The trial court must decide if "under the totality of the circumstances and viewing the defendant's conduct in the aggregate, a reasonable hypothetical trier of fact could have found either malice or gross neglect/reckless disregard." Wirtz v. Switzer, 586 So.2d 775, 783 (Miss.1991). On remand the trial court may consider the submission of a punitive damages instruction based on the independent tort of retaliatory discharge.
Id. at 543.
¶ 14. On remand, the cases of Willard and Sumner were consolidated for trial purposes, evidence was presented, and the jury was instructed on punitive damages in conjunction with jury instructions on retaliatory discharge and tortious breach of contract and given special interrogatories. The jury returned a punitive damages award of $1,500,000 each to Willard and Sumner. Paracelsus Health Care Corp. v. Willard, 754 So.2d 437, 440 (Miss.1999) (Willard II). Paracelsus appealed, and this Court affirmed. Id. at 448.
¶ 15. With this history before us, we return to the facts of the case sub judice. Viewing the evidence before us in the light most favorable to DeCarlo, as we are duty-bound to do:[7] (1) DeCarlo suspected that *357 Retail Services, a business in which Schafer, Bonus's CEO, was a fifty-percent owner, was billing Bonus for refurbished Wal-Mart fixtures which were never delivered to Bonus; (2) DeCarlo reported this perceived illegal activity to Bonus's chief financial officer who told DeCarlo to "lay low;" (3) Schafer immediately thereafter began to repeatedly harass DeCarlo; (4) DeCarlo reported Schafer's conduct to several members of Bonus's board of directors; (5) Schafer, at the direction of Bonus's board of directors, terminated DeCarlo's employment with Bonus less than a month after DeCarlo reported Schafer's conduct to several directors; and (6) Schafer was eventually terminated by Bonus.
¶ 16. The facts of Willard I are unquestionably similar to the facts in today's case. In Willard I, two hospital employees reported to the employer the illegal activities of another hospital employee, namely the hospital administrator, who was falsifying expense vouchers and forging checks to receive "reimbursements for expenses," contrary to established hospital policy, and yet, instead of disciplining the hospital administrator, the employer fired the two "whistle-blowers." Certainly, the hospital administrator's actions were "in direct opposition to the good of the employer;" however, in reporting the hospital administrator's illegal activity to the employer, the two reporting employees were acting in the best financial interest and good will of the employer.
¶ 17. In sum, Willard I held that employees may pursue a retaliatory discharge claim against their employer based on their discharge for reporting illegal actions of the hospital administrator, who was a co-employee. While the hospital administrator may have held a position superior in authority to the positions held by the plaintiffs/hospital employees, the hospital administrator was unquestionably a co-employee. In today's case, we have a factual scenario which is virtually identical to that in Willard I. DeCarlo's claim is that he was discharged by his employer (Bonus) in retaliation for reporting the purported illegal activities of Schafer, DeCarlo's co-employee, although Schafer (like the hospital administrator in Willard I) held a position (CEO) superior to that of DeCarlo. Thus, to answer the first certified question, we need not expand existing law, but merely follow our existing law as espoused in Willard I. Today's case, like Willard I, involves purported illegal activity which unquestionably would have a harmful effect on the employer's business, i.e., loss of corporate income. As we clearly stated in Willard I, "[d]ischarge in retaliation for an employee's good faith effort to protect the employer from wrongdoing constitutes an independent tort and may support punitive damages." Willard I, 681 So.2d at 543.
¶ 18. For the reasons stated, we answer the first certified question by stating that the laws of Mississippi as interpreted in McArn and Willard I,[8] permit a retaliatory discharge claim for discharge in retaliation for reporting a co-employee's illegal acts that relate to the employer's business.[9]

*358 CERTIFIED QUESTION NUMBER TWO

DO THE LAWS OF MISSISSIPPI ALLOW FOR INDIVIDUAL LIABILITY FOR THE TORT OF RETALIATORY DISCHARGE EVEN IF THE INDIVIDUAL DEFENDANT'S PARTICIPATION IN THE DISCHARGE WAS IN THE COURSE AND SCOPE OF HIS EMPLOYMENT?
¶ 19. We agree with the Fifth Circuit that this second certified question need only be answered if we resolved the first certified question in DeCarlo's favor. Since we answered the first question in favor of DeCarlo, we move now to this second certified question.
¶ 20. In DeCarlo, the Fifth Circuit determined that there is a split in authority from other jurisdictions on this issue by noting:
At least three states, West Virginia, New Jersey, and Pennsylvania, permit individual liability for the tort of wrongful retaliatory discharge for individuals who personally participate in the discharge "as the principal protagonist" even if the individual was acting within the scope of his employment. See Ballinger v. Delaware River Port Auth., 172 N.J. 586, 800 A.2d 97, 110 (N.J. 2002) (describing rule in New Jersey and Pennsylvania); Harless v. First Nat'l Bank, 169 W.Va. 673, 289 S.E.2d 692, 698-99 (W.Va.1982) ("The discharge serves to fix responsibility on the employer but this does not mean that another employee who has been the principal protagonist in obtaining the employee's discharge would not also be liable."). This individual liability even extends to persons who participate in the decision, but did not actually fire the plaintiff. Id.

On the other hand, other state courts would deny individual liability in this case, because (1) individual liability could be imposed only if the employee acted outside of the scope of his employment and in his own interest, see Bourgeous v. Horizon Healthcare Corp., 117 N.M. 434, 872 P.2d 852, 855-56 (N.M. 1994), which is not the case here; or (2) the tort of retaliatory discharge was intended only to impose liability on the corporate entity itself and not individual defendants, see Rebarchek v. Farmers Co-op. Elevator, 272 Kan. 546, 35 P.3d 892, 903 (Kan.2001); Reno v. Baird, 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333, 1347 (Cal.1998); Buckner v. Atl. Plant Maint., Inc., 182 Ill.2d 12, 694 N.E.2d 565, 569, 230 Ill.Dec. 596 (1998) ("[T]he power to hire and fire employees is ultimately possessed only by the employer. Consequently, the tort of retaliatory discharge may be committed only by the employer. The agent or employee who carries out the employer's decision to fire will not be subject to personal liability for retaliatory discharge.").
DeCarlo, 512 F.3d at 176 (footnote omitted).
¶ 21. We find nothing in McArn or its progeny which would extend the narrowly carved-out exceptions to our employment-at-will doctrine to create individual liability for the tort of retaliatory discharge if the individual defendant/co-employee's participation in the discharge was deemed to be in the course and scope of the individual defendant's employment. In McArn, we clearly limited liability to the employer and not the employee. McArn, 626 So.2d at 607. Likewise, in Willard I, this Court stated that "[a]nyone who terminates an employee" for reporting illegal acts may be liable, thus clearly referring to liability on the part of the employer. Willard I, 681 So.2d at 543. Finally, in this Court's recent decision in Jones, v. Fluor Daniel Services Corp., 959 So.2d 1044, 1046-48 (Miss.2007), we clearly discussed the plaintiffs' wrongful discharge claim only in the *359 context of potential liability on the part of the employer.
¶ 22. Also, limiting liability to the employer in the present case is consistent with the doctrine of respondeat superior as well as the concepts of principal and agency. See e.g., Children's Med. Group, P.A. v. Phillips, 940 So.2d 931, 935 (Miss.2006) ("Under the doctrine of respondeat superior, the master is liable for the acts of his servant which are done in the course of his employment and in the furtherance of the master's business." (citation omitted)); Lane v. Oustalet, 873 So.2d 92, 95-96 (Miss.2004) (agent's knowledge and information gained in conducting principal's business is imputed to principal).
¶ 23. We are thus satisfied that our McArn-created exceptions were intended only to impose liability on the employer and not on individual defendants who are acting in the course and scope of their employment when participating in the discharge giving rise to the retaliatory discharge claim. Thus, we quickly dispatch this second question by answering the question in the negative.
¶ 24. For the reasons stated, we answer the second certified question by finding that the laws of Mississippi do not allow for individual liability for the tort of retaliatory discharge even if the individual defendant's participation in the discharge was in the course and scope of the individual defendant's employment.
¶ 25. CERTIFIED QUESTIONS ANSWERED.
SMITH, C.J., WALLER AND DIAZ, P.JJ., GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. EASLEY, J., CONCURS IN PART AND IN RESULT.
NOTES
[1] These facts and proceedings are summarized here based on our review of the federal district court's Memorandum Opinion and Order. DeCarlo v. Bonus Stores, Inc., 2006 WL 1328890 at **1-7, 2006 U.S. Dist. LEXIS 47132, **1-6 (S.D.Miss. May 12, 2006).
[2] Schafer disputes DeCarlo's version of the relevant events, but in order to answer the certified questions, we need not further discuss the pertinent facts. Likewise, since DeCarlo's assertions concerning Fields's purported intimidation involve actions occurring after DeCarlo's termination, such post-termination actions by Fields are irrelevant to today's discussion.
[3] Since, as discussed, infra, we find that Willard I guides us to the answer of the first certified question, there is no need to discuss the other cases cited by the Fifth Circuit.
[4] Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, (1938).
[5] Laws asserted that he was discharged by his employer, a finance company, due to his refusal to engage in "packing," which is "a practice of adding various forms of insurance coverage to a borrower's loan package, collecting a premium for said coverage, and through deceptive dealings or practices, neither informing the borrower that the loan repayment schedule includes the cost of insurance nor offering the borrower an opportunity to decline such coverage." Laws, 667 F.Supp. at 343.
[6] In Perry, this Court found that the case before us did not present the appropriate occasion to make a major departure from our rule laid out in Kelly. Perry, 508 So.2d at 1090.
[7] Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss.1983)
[8] Neither party challenges the applicability or correctness of McArn and Willard I.
[9] We unequivocally state that, based on the limited record before us, we have no opinion as to whether Schafer was guilty of illegal activity, but instead, we are answering the question as certified to us by the Fifth Circuit Court of Appeals.