# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60088
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

January 16, 2014

Lyle W. Cayce
Clerk

TONY CRAWFORD,

Plaintiff-Appellant,

v.

BANNUM PLACE OF TUPELO,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi
U.S.D.C. No. 3:10-CV-54

Before STEWART, Chief Judge, and SMITH and DENNIS, Circuit Judges.

PER CURIAM:*

Plaintiff-Appellant Tony Crawford ("Crawford") appeals the district court's summary judgment in favor of Defendant-Appellee Bannum Place of Tupelo ("Bannum"). We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

The United States Department of Justice, Bureau of Prisons ("BOP") contracts with residential re-entry centers to provide housing and services to

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60088

federal inmates transitioning from a period of incarceration back to the community. Bannum is a residential re-entry center located in Tupelo, Mississippi. Bannum hired Crawford, in February 2008 as a "counselor aide." Crawford did not sign an employment contract but he did sign Bannum's Personnel Policies, Practices, and Procedures Handbook ("Bannum's Handbook") that delineated his rights and obligations as a Bannum employee. Bannum's Handbook included a section indicating that its employees were expected to report misconduct by other employees and that they would not be disciplined for doing so. Additionally, Crawford signed a BOP Statement of Work ("Statement of Work") that instructed Bannum to not restrict an employee's effort to report misconduct and not retaliate against any employee who reported misconduct. Bannum's Handbook also included, in multiple sections, a disclaimer that unambiguously pronounced that either the employee or Bannum could terminate the employment relationship at any time for any reason. The Statement of Work did not include such a disclaimer.

Crawford alleges that at around 1:00 a.m. on December 10, 2008, a resident approached him and asked if he could go outside to smoke a cigarette. Bannum policy prohibits residents from going outside of the facility after the 9:00 p.m. curfew. Nevertheless, Crawford told the resident to "check with Lester." Bobby Lester ("Lester") was also a counselor aide and was on duty with Crawford on December 10, 2008. Crawford claims that shortly after he instructed the resident to check with Lester, he heard Lester say "Ah!! This is some bull****!!" Crawford alleges that Lester then accused him of allowing the resident to go outside to smoke after curfew. According to Crawford, Lester became very angry, engaged in a profanity laced tirade, and threatened him. Lester was apparently angry because he believed Crawford allowed the resident to go outside after curfew, thereby violating Bannum policy and jeopardizing both of their jobs. Crawford claims that he calmly explained that

2

he did not allow the resident to go outside and that the resident must have misheard what he said. Crawford's hand written complaint to Bannum management states that Lester then said "I don't give a damn what they heard and mutha f****' if you say it again me and you gone go up! (meaning fight)." Crawford's deposition testimony indicates that he considered those words, coupled with Lester's body language, threatening.

Crawford asserts that he reported the alleged threat to Bannum's then director, Cynthia Hill ("Hill"), on December 10, 2008, and that Hill told him to "leave it alone." According to Crawford, Hill did not address his complaint because she did not want higher ranking Bannum officials to initiate an investigation and preferred to handle it "in-house." Crawford claims that on December 15, 2008, he and Lester again became engaged in a verbal altercation. Crawford asserts that he surreptitiously captured the incident by audio recording so that he could provide Bannum management with concrete evidence that his concerns about Lester were legitimate.[1] Crawford complained to Hill again about Lester shortly after the December 15, 2008 incident. On December 16, 2008, Hill sent a memorandum to Bannum's compliance manager, Cherie Summers ("Summers"), conveying the substance of Crawford's complaints. Summers initiated an investigation into the matter and both Crawford and Lester were placed on suspension during the pendency of the investigation.

On December 23, 2008, Summers submitted a memorandum to Bannum's vice president recommending that Crawford and Lester be terminated. Crawford and Lester were officially discharged on January 20, 2009. Summers's memorandum recommending Crawford's termination

---

[1] This recording was not included in the record and the substance of the December 15, 2008 argument is unclear.

No. 13-60088

included, *inter alia*, the following factual findings: Crawford was on duty when residents were up after curfew and allowed to go out and smoke; Crawford sat in the resident break room instead of the counselor aide station while on duty; Crawford recorded a conversation between himself and another employee; and residents apparently felt comfortable violating rules while Crawford was on duty. Bannum noted that Crawford's complicity in residents' rule violations contributed to an atmosphere of non-compliance and found that there were "some underlying integrity issues in the facility."

In October 2010, Crawford filed a law suit in the district court asserting claims for wrongful termination, negligent misrepresentation, estoppel and detrimental reliance, breach of the duty of good faith and fair dealing, and negligent infliction of emotional distress. Crawford's suit alleged that he was terminated in retaliation for his persistence in reporting and seeking redress for the incident where he was allegedly threatened by Lester. On August 1, 2012, Bannum moved for summary judgment. The district court granted Bannum's motion on January 8, 2013, and Crawford filed a timely appeal. After a comprehensive review of the record, we AFFIRM the district court's summary judgment for the reasons explained below.

## II.    DISCUSSION

### A.  Standard of Review

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 877 (5th Cir. 2002). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view all of the evidence and draw all inferences in the light most favorable to the nonmoving party, "and all reasonable doubts about the facts should be resolved in favor of the nonmoving party." *Terrebonne*, 310

4

F.3d at 877. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Nuwer v. Mariner Post-Acute Network*, 332 F.3d 310, 314 (5th Cir. 2003) (citation omitted). Because this is a diversity action, we apply Mississippi law. *See Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999).

## B.  Wrongful Termination

Crawford's suit alleges that Bannum wrongfully terminated him because he reported Lester's alleged unlawful conduct and because he refused to participate in Bannum's illegal scheme to "cover up" Lester's conduct. Crawford also alleges that he was not an at-will employee because he signed documents that precluded Bannum from terminating him for reporting a co-employee's misconduct.

Bannum's position is two-fold. First, Bannum argues that Crawford was an at-will employee; therefore, he could be terminated at any time and for any reason. Second, Bannum claims that they terminated Crawford because he violated Bannum policy and not because he reported or refused to participate in illegal activity.

For the reasons explained below, we conclude that Crawford was an at-will employee and that his termination was not in violation of Mississippi public policy.

### 1.  The At-Will Employment Doctrine

Mississippi adheres to the common law principle that in the absence of an employment contract or when an employment contract is for an indefinite term, the employment relationship may be terminated at any point by either party. *Bobbitt v. Orchard, Ltd.*, 603 So.2d 356, 360–61 (Miss. 1992). This principal is commonly referred to as the at-will employment doctrine. When applicable, the at-will employment doctrine allows either the employer or the

employee to terminate the employment relationship for "a good reason, a wrong reason, or no reason." *Id.* (citation omitted).

### a. **The *Bobbitt* Exception**

In *Bobbitt*, the Mississippi Supreme Court held that when employers distribute handbooks or policy manuals, they may create contractual obligations that override the at-will nature of an employment relationship. *Id.* at 361. The *Bobbitt* court concluded that language in policy manuals or handbooks may create an obligation on the part of the employer to "follow its provisions in reprimanding, suspending or discharging an employee for infractions specifically covered therein."[2] *Id.* The court made clear, however, that this obligation is nullified when there is an express disclaimer in the manual explaining that its terms do not affect the employer's right to terminate the employee at will. *See Id.* at 362.

In this case, Bannum's Handbook explained that employees were expected to report instances of misconduct to management and that Bannum would not discipline an employee for making such a report. Nevertheless, Bannum's Handbook included a disclaimer that made clear that it did not constitute an employment contract and that Bannum could terminate Crawford "at will, at any time, with or without notice or cause." Therefore, Crawford's signing Bannum's Handbook did not create an employment contract that overrides the at-will nature of the employment relationship. *See Hartle v. Packard Elec.*, 626 So.2d 106, 109 (Miss. 1993) (holding that a disclaimer in an employer's handbook preserves the employer's right to

---

[2] We note that Crawford does not allege that he was wrongfully discharged because he committed an "infraction" covered by Bannum's Handbook. Crawford argues that Bannum's Handbook indicates that he would not be disciplined for reporting the misconduct of another employee. He cites no authority for the proposition that *Bobbitt* extends to this factual scenario and we do not decide that issue today. For other reasons explained *infra*, we hold that the *Bobbitt* exception does not apply to Crawford's wrongful discharge claim.

terminate an employee at-will); *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088–89 (Miss. 1987) (holding that an employee handbook cannot be considered a contract where it explicitly states that the employee may be terminated at-will).

Additionally, Bannum required that Crawford sign the Statement of Work that outlined BOP's expectations of its residential re-entry contractors. Much like Bannum's Handbook, the Statement of Work contains a provision requiring Bannum's employees to report misconduct. It also states that the contractor (Bannum) shall not retaliate against an employee who reports misconduct. However, there is no disclaimer in the Statement of Work that demonstrates that provisions therein do not preempt the at-will nature of the employment relationship between Bannum and its employees. Crawford argues that the absence of a disclaimer in the Statement of Work invalidates the at-will nature of his employment. We disagree.

The Court of Appeals of Mississippi encountered a similar issue in *Senseney v. Miss. Power Co.*, 914 So.2d 1225 (Miss. Ct. App. 2005).[3] In *Senseney*, the plaintiff signed an employment application that "unambiguously stated that the prospective employee agreed that employment with Mississippi Power was on an at-will basis and that nothing in the company's personnel guidelines or employee handbook was intended to create an employment contract." *Id.* at 1229. The plaintiff was also provided a copy of the employer's corporate guidelines which outlined a framework of progressive employee discipline ranging from "counseling sessions, to administrative warnings, to

---

[3] The Mississippi Supreme Court has not spoken directly on this issue so we look to the Mississippi Court of Appeals for guidance in making our "*Erie* guess." *See Learmonth v. Sears, Roebuck and Co.*, 710 F.3d 249, 258 (5th Cir. 2013) (stating that "we defer to intermediate state appellate courts decisions, unless convinced by other persuasive data that the higher court of the state would decide otherwise") (citation and internal quotation marks omitted)).

mandatory day off, to suspensions, to discharge." *Id.* at 1226–27. The corporate guidelines did not contain a disclaimer that unambiguously preserved the at-will nature of the employment relationship. *Id.* at 1229. Senseney argued that because there was no disclaimer in the corporate guidelines, the guidelines created an employment contract between Senseney and Mississippi Power. The court disagreed and held that "[t]hough the disclaimer appeared in Senseney's employment application and not within the corporate guidelines, the disclaimer expressly placed Senseney on notice that nothing in the corporate guidelines or in any employee handbook was intended to create an employment contract, and that his employment was to be on an at-will basis." *Id.*

Applying the Court of Appeals of Mississippi's reasoning in *Senseney* to the facts of this case, we conclude that the absence of a disclaimer in the Statement of Work or any other documents Bannum may have provided Crawford does not negate the clear and unambiguous pronouncement in Bannum's Handbook that Crawford was an at-will employee.[4] Accordingly, we hold that the *Bobbitt* exception does not apply to the facts of this case.

### b. **The *McArn* Exception**

Crawford also argues that Bannum's decision to terminate him violated Mississippi public policy. Mississippi recognizes two public policy exceptions to the at-will employment doctrine: (1) the reporting of illegal conduct exception and (2) the refusing to participate in illegal activity exception. *See McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So.2d 603 (Miss. 1993).

---

[4] Crawford makes similar arguments with respect to other documents that were provided to him as part of his employment with Bannum. To the extent that any of these documents did not include a disclaimer, we likewise conclude that the disclaimer in Bannum's Handbook was sufficient to put Crawford on notice that he was an at-will employee.

Crawford asserts that both exceptions apply in this case. We disagree and will address each of the exceptions in turn.

### *Reporting the Illegal Conduct of a Co-Employee*

In *McArn*, the court stated that "an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." *Id.* at 607. In subsequent cases, the Mississippi Supreme Court made clear that the exception also applies when an employee reports the purported illegal activities of a co-employee, but only if those acts relate to the employer's business. *See DeCarlo v. Bonus Store, Inc.* 989 So.2d 351, 357 (Miss. 2008); *Jones v. Fluor Daniel Servs. Corp.*, 959 So.2d 1044, 1047–48 (Miss. 2007) (stating that the reporting of illegal acts exception has been applied only when the illegal act "had something to do with the business itself").

There are several reasons why this narrow public policy exception is inapplicable under these facts. *See Harris v. Miss. Valley State Univ.*, 873 So.2d 970, 986 (Miss. 2004) (stating that the Mississippi Supreme Court carved out a "narrow public policy exception" to the at-will employment doctrine); *Jones*, 959 So.2d at 1047 (characterizing the *McArn* exception as "very narrow"). First, Crawford failed to demonstrate that the purported illegal act "had something to do with" Bannum's business. *See Jones*, 959 So.2d at 1048. In our view, the alleged threat was not related to Bannum's business of transitioning federal offenders from incarceration to the community. Instead, it was a communication of personal frustration from Lester to Crawford. The Mississippi Supreme Court's decision in *Jones* is instructive on this issue. In that case, African-American day laborers alleged that they were terminated because they complained about their supervisor's use of racial slurs. *Id.* at 1045–46. The plaintiffs claimed that their supervisor's conduct amounted to a

violation of a disturbance of the peace statute or a provoking breach of peace statute. *Id.* at 1047. The court held that even if the supervisor violated one of the statutes, the alleged violation had nothing to do with the employer's business. *Id.*

Here, even if we assume that Lester's comments rise to the level of a criminal threat, we are not convinced that the alleged threat had anything to do with Bannum's business. We acknowledge that the alleged threat was made during the course of a work-related dispute. Nevertheless, it was a product of Lester's personal frustration with Crawford and had nothing to do with Bannum's business purpose. Much like the offending supervisor in *Jones* who used racial slurs, Lester's personal predilection for coarse language and aggressive discourse falls well outside of the scope of Bannum's business purpose.

Second, Crawford failed to show that he reported the alleged illegal conduct *because* it was illegal. *See id.* at 1048. The *Jones* court made note of the fact that the plaintiffs never considered their co-employee's conduct to be criminal, but rather reported it because it "merely bothered" them. *Id.* In doing so, the court drew a distinction between conduct that a plaintiff reported because he believed it to be illegal and conduct reported for other reasons. Only the former falls within the ambit of Mississippi's narrow public policy exception. *See id.* Crawford's deposition testimony makes clear that he never believed Lester's conduct was illegal. Naturally, it follows that Crawford did not report Lester's conduct *because* it was illegal.

Third, Crawford did not sufficiently establish a causal nexus "between the reporting of the alleged misconduct and the decision process resulting in the discharge." *Dismuke v. City of Indianola*, 32 F. App'x 126, *4 (5th Cir. 2002) (per curiam) (unpublished) (citing *Hust v. Forrest Gen. Hosp.*, 762 So.2d 298, 301–302 (Miss. 2000)). The record is devoid of any evidence showing that

10

No. 13-60088

Bannum terminated Crawford *because* he reported Lester's alleged misconduct. Viewing the evidence in the light most favorable to Crawford, the record shows that Bannum's decision to terminate Crawford was based on its findings that he violated Bannum's policies. We note the distinction between Crawford's being terminated *because* of his report and Crawford's being terminated, in a sense, *as a result of* his report. The record demonstrates that Crawford's report likely set in motion a chain of events that ultimately lead to his termination. Crawford conflates the consequences of his decision to report with the cause of his termination. Such a conflation fails as a means to escape the constrictions of the at-will employment doctrine.

Accordingly, we conclude that there are no genuine issues of material fact as to whether Bannum's decision to terminate Crawford violated Mississippi's public policy exception that protects employees who report the unlawful conduct of a co-employee.

### *Refusing to Participate in Illegal Activity*

Moreover, we are unpersuaded by Crawford's argument that the *McArn* exception applies because he refused to participate in criminal activity. According to Crawford, Bannum's instruction to "leave [the alleged threat] alone" was an attempt to conceal a material fact from the federal government in violation of 18 U.S.C. § 1001.

18 U.S.C. § 1001(a) provides in relevant part:

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully–
(1) falsifies, conceals, or covers up by any trick scheme or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or

11

No. 13-60088

(3) makes or uses any false writing or document knowing the same
to contain any materially false, fictitious, or fraudulent statement
or entry;
shall be fined under this title or imprisoned not more than 5 years,
or both.

In support of his argument, Crawford relies on this court's opinion in *Drake v. Advance Constr. Serv.*, 117 F.3d 203 (5th Cir. 1997). In that case, the plaintiff alleged that his employer instructed him to make false statements to a government agency in violation of 18 U.S.C. § 1001. *Id.* at 204. Crawford's reliance on *Drake* is misguided. Unlike the plaintiff in *Drake*, Crawford did not produce evidence that created a fact issue with respect to whether Bannum officials directed him to commit a crime. *See Kyle v. Circus Circus Miss., Inc.*, 430 F. App'x 247, 252 (5th Cir. 2011) (per curiam) (unpublished) (holding that to invoke the *McArn* exception, the plaintiff must demonstrate that he received a directive to engage in criminal activity). Crawford failed to cite any authority supporting the proposition that a residential re-entry center's failure to report to the BOP an allegation of a threat by one employee against another violates § 1001. Moreover, the record demonstrates that the complaint about the alleged threat was actually documented by Bannum's director and forwarded to its compliance manager only six days after it occurred. The record also shows that the complaint was investigated and ultimately resulted in Lester's termination. These facts negate Crawford's conclusory assertion that Bannum engaged in a "cover up" of Lester's alleged criminal activity.

Therefore, we conclude that there are no genuine issues of material fact as to whether Bannum's decision to terminate Crawford violated Mississippi's public policy exception that protects employees who refuse to participate in illegal activity.

12

## C. Negligent Misrepresentation

To prove a negligent misrepresentation claim, Crawford must establish the following:

> (1) a misrepresentation or omission of a fact; (2) that the representation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise the degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance.

*Holland v. Peoples Bank & Trust Co.*, 3 So.3d 94, 101 (Miss. 2008) (citations omitted).

Crawford claims that Bannum failed to exercise reasonable care in advising its employees, through its handbook, that they should report disputes with other employees and that they would not be disciplined for doing so. Crawford argues that he relied on Bannum's misrepresentation that they would not discipline him for reporting another employee's misconduct. This claim is without merit. As stated previously, we conclude that there are no genuine issues of material fact with respect to whether Bannum terminated Crawford because he reported Lester's alleged misconduct. Therefore, Crawford is unable to prove that Bannum made a factual misrepresentation upon which he reasonably relied and suffered damages. *See Levens v. Campbell*, 733 So.2d 753, 762–63 (Miss. 1999) (holding that the plaintiff's failure to demonstrate that the defendant made a factual misrepresentation was fatal to her negligent misrepresentation claim).

Accordingly, Bannum is entitled to judgment as a matter of law on Crawford's negligent misrepresentation claim.

## D. Estoppel and Detrimental Reliance

Crawford asserts that Bannum is estopped from raising "certain legal defenses which might otherwise be available" because it provided "direct and clear instruction that its employees should report any dispute with a co-worker" and that employees would not suffer discipline for making such a report.

"In order to prove a claim of estoppel, the plaintiff must prove: (1) a representation that later proves to be untrue; (2) an action by the person seeking to invoke the doctrine, such action being undertaken on justifiable reliance of the representation; and (3) a resulting detriment to that person arising from his action." *Suddith v. Univ. of S. Miss.*, 977 So.2d 1158, 1180 (Miss. Ct. App. 2007).

Crawford failed to prove that Bannum made any representations that later proved to be untrue.   As stated previously, Bannum sufficiently advised Crawford that he was an at-will employee and the record does not show that his termination contravened any assurances made by Bannum through its handbook or other documents. Accordingly, Bannum is entitled to judgment as a matter of law on this claim.

## E. Breach of the Duty of Good Faith and Fair Dealing

The Mississippi Supreme Court has expressly stated that it does not recognize a cause of action based upon a breach of the duty of good faith and fair dealing arising from an at-will employment relationship. *Young v. N. Miss. Med. Ctr.*, 783 So.2d 661, 663 (Miss. 2001).   Our conclusion that Crawford was an at-will employee renders this claim meritless.

### F.  Negligent Infliction of Emotional Distress

Crawford alleges that Bannum was "negligent in failing to conform its policies to the policies communicated to its employees and that this negligence has caused [Crawford] to suffer emotional distress, identifiable through physical manifestations."  The Mississippi Supreme Court has made clear that this claim is barred by the exclusivity provision of the Mississippi Workers' Compensation Act ("the Act"). Miss. Code Ann § 71-3-9; *see Franklin Corp v. Tedford*, 18 So.3d 215, 221 (Miss. 2009) (stating that the Act provides tort immunity for causes of action that are not based upon an "actual intent to injure" the employee) (citation omitted); *Stevens v. FMC Corp.*, 515 So.2d 928, 931 (Miss. 1987) (holding that because plaintiff's claim sounded in negligence, the Act provided his exclusive remedy and he was "therefore barred from pursuing a common law tort remedy").  Accordingly, Bannum is entitled to judgment as a matter of law on this claim.

### III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's summary judgment in favor of Bannum.