# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00883-COA

**JERED L. GIBBS**                                              **APPELLANT**

**v.**

**PORTERVILLE WATER ASSOCIATION**                 **APPELLEE**
**BOARD OF DIRECTORS**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/14/2015 |
| TRIAL JUDGE: | HON. LESTER F. WILLIAMSON JR. |
| COURT FROM WHICH APPEALED: | KEMPER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BENNIE L. JONES JR. |
| | ROBERTA LYNN HAUGHTON |
| ATTORNEY FOR APPELLEE: | KENNETH DUSTIN MARKHAM |
| NATURE OF THE CASE: | CIVIL – OTHER |
| TRIAL COURT DISPOSITION: | GRANTED SUMMARY JUDGMENT IN FAVOR OF THE APPELLEE |
| DISPOSITION: | AFFIRMED – 11/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., BARNES AND GREENLEE, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1. Jered Gibbs brought a wrongful termination action against the Porterville Water Association Board of Directors (Board) after it terminated his employment with the Porterville Water Association (Water Association). Finding no genuine issue of material fact, the Circuit Court of Kemper County granted summary judgment in favor of the Board and dismissed the case with prejudice. Gibbs appeals.

¶2. Finding no error, we affirm the judgment of the circuit court.

FACTS

¶3. In January 2014, the Board told James Johnigan, an employee of the Water Association, to find a replacement for his position as a class-D water operator while he was to be incarcerated. Johnigan recommended Jered Gibbs to the Board, and Gibbs was officially hired on January 29, 2014, during the Board's scheduled monthly meeting. At the time of his hiring, Gibbs was not certified by the state of Mississippi as a class-D water operator; further, Gibbs, a member of the United States Coast Guard Reserve (Reserve), had recently sought to cancel a retirement request he had previously submitted to the Reserve and was awaiting a response from the Reserve regarding that cancellation.[1]

¶4. In order to obtain class-D certification, Gibbs was required to (1) attend a water-certification course; (2) pass a written examination from the State Department of Health, Bureau of Public Water Supply; and (3) work for one year in a class-D or higher Mississippi water system under the direct supervision of a certified, unrestricted class-A, B, C, or D water operator. After his hiring, the Board enrolled Gibbs into, and paid all costs for, a class-D water-certification course, scheduled for February 10-14, 2014. Gibbs successfully completed the course and passed a written examination administered by the Mississippi Department of Health, Bureau of Public Water Supply.

¶5. After passing the written examination, Gibbs contends that he spoke with Bill Briggs,

---

[1] In his response to interrogatory No. 6 of the Board's first set of interrogatories, Gibbs explained that he entered the military on July 15, 1992, and that he was eligible for retirement on December 20, 2012, as a result of honorably completing twenty years of service. He went on to explain that, in June 2013, he requested retirement but decided to cancel that request a few months later after attending an informative financial and retirement seminar in December 2013.

president of the Board, who expressed concern that the Board had wasted money on paying for Gibbs to become certified if he was going to be recalled for active military duty, thus rendering him unable to work for long periods of time. Gibbs alleges that after this conversation, he ultimately did retire from the Reserve on July 1, 2014, thereby foregoing his military-reserve pay.

¶6.    On September 9, 2014, via a conference call, the Mississippi Department of Health, Bureau of Public Water Supply's certifications director informed the Board that Gibbs would have to work for an additional ten months under supervision before the certification process would be complete. That same day, the Board terminated Gibbs's employment, consistent with his status as an at-will employee. On October 30, 2014, Gibbs filed a wrongful- and unexpected-termination complaint in the circuit court, contending that the Board had defaulted on its agreement to retain him as an employee until he was completely certified, which was allegedly agreed upon by the Board and its seven-member board of directors. Gibbs sought damages in the amount of $19,200—the amount that he would have received had the Board retained him until he completed his certification—and $21,229—which is twenty percent of the military-reserve income Gibbs would have received for the next nineteen years had he not retired from the Reserve.

¶7.    On April 9, 2015, the Board filed a motion for summary judgment, along with a brief and (1) affidavits from individual board members,[2] wherein the members—speaking both

_____

[2] The affidavits were submitted from (1) Bill Briggs, president of the Board, (2) Johnny Brown, vice-president of the Board, (3) Cervera Davis, member of the Board, (4) Robert Anthony, member of the Board, (5) Gladys J. Bryant, member of the Board, (6) Louie Hobson, member of the Board, and (7) Danny Simon, member of the Board.

individually and for the Board as a whole—denied having any knowledge of executing a written employment contract with Gibbs; (2) Gibbs's responses to the Board's requests for admissions; (3) minutes from the January 27, 2014 monthly meeting; (4) the Water Association's bylaws as adopted on October 15, 2012; (5) Gibbs's responses to the Board's first set of interrogatories; (6) a letter from Gibbs, dated January 24, 2014; (7) the complaint; and (8) the Personnel Policy and Procedures Manual for the Board, as adopted in May 2011. The hearing on the motion for summary judgment was held on May 13, 2015. On May 14, 2015, the circuit court granted summary judgment in favor of the Board and dismissed the case with prejudice. As stated above, Gibbs now appeals the circuit court's judgment.

## DISCUSSION

¶8.     "We review the circuit court's grant of summary judgment de novo." *Stribling v. Rushing's, Inc.,* 115 So. 3d 103, 104 (¶5) (Miss. Ct. App. 2013). Under Rule 56 of the Mississippi Rules of Civil Procedure, "[s]ummary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (quoting *Byrne v. Wal–Mart Stores, Inc.,* 877 So. 2d 462, 464 (¶3) (Miss. Ct. App. 2003)). A movant bears the burden of proving that no genuine issues of material fact exist. *Moore ex. rel Moore v. Miss. Valley Gas Co.,* 863 So. 2d 43, 47 (¶15) (Miss. 2003). It is well established that

> when a party opposing summary judgment on a claim or defense as to which
> that party will bear the burden of proof at trial, fails to make a showing
> sufficient to establish an essential element of the claim or defense, then all

4

> other facts are immaterial, and the moving party is entitled to judgment as a matter of law.

*Id.* (internal citation and quotation marks omitted). In addition, the evidence is viewed in the light most favorable to the nonmoving party. *Doe v. Stegall,* 757 So. 2d 201, 204 (¶8) (Miss. 2000).

¶9. Gibbs argues that the circuit court erred in granting the Board's motion for summary judgment because there are genuine issues of material fact regarding both the existence of an employment contract between himself and the Board and his entitlement to damages due to the Board's breach of an oral contract. In support, Gibbs alleges that he was not an at-will employee, but rather a permanent, full-time employee of the Water Association. Gibbs also contends that he relied on the employment agreement to his detriment, noting his loss in income from both the amount he would have received from the Reserve payments and future payments from his employment with the Water Association.

¶10. Gibbs asserts that the Board failed to support its motion for summary judgment with competent evidence. He alleges that the individual affidavits of the Board's members, submitted by the Board to the circuit court, were all inadmissible because the individual members cannot competently adhere to having "personal knowledge" of what the Board did as a whole. In support, Gibbs cites Rule 56(e) of the Mississippi Rules of Civil Procedure, which states:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Gibbs argues that a board can only speak through its minutes and alleges that the minutes from the January 27, 2014 board meeting are incompetent evidence because they are not signed, sworn, or certified. Gibbs also asserts that the January 27, 2014 board meeting minutes constitute hearsay because they reference actions that took place at an earlier, special board meeting held on January 24, 2014.[3] Gibbs contends that the best evidence of a particular board meeting would be the minutes from that actual meeting. As such, Gibbs argues that the January 27, 2014 board meeting minutes and affidavits should have been stricken by the circuit court.[4]

¶11. Gibbs also asserts that his answers to the Board's interrogatories were not given under oath. He cites Rule 33(b)(1) of the Mississippi Rules of Civil Procedure, which reads as follows: "Each interrogatory shall be answered separately and fully in writing *under oath*, unless it is objected to, in which event the objecting party shall state the reasons for the objection and shall answer to the extent the interrogatory is not objectionable." (Emphasis added).

¶12. Gibbs also argues that the Board is estopped from asserting at-will employment as a

---

[3] The particular portion of the minutes Gibbs is referring to reads, in pertinent part:

Bill then informed the members at the meeting that the [B]oard had a special meeting on January 24. The [B]oard had reviewed all information available to them and there was nothing in black and white that would prohibit [Johnigan] from keeping his job while incarcerated. Jered Gibbs has been hired as a temporary full[-]time employee while [Johnigan] is gone. The association will send him to school to be certified.

[4] We note that Gibbs filed a motion to strike the affidavits and minutes as exhibits to the circuit court, and the circuit court denied that motion when entering its judgment at the summary-judgment hearing.

defense because he detrimentally relied on the Water Association hiring him as a full-time permanent employee, which resulted in his retiring from the Reserve. Gibbs asserts that, as a result of his reliance, he suffered damages when he lost his Reserve income. He also asserts that, as a result of the Water Association terminating his employment, he was left jobless and forced to seek and find work at a department store, where he earns less income than he would have from his job at either the Reserve or the Water Association.

¶13. In response, the Board rebuts Gibbs's arguments that the Board's members did not execute affidavits based on their "personal knowledge" and that they cannot individually speak as to the Board's actions. The Board argues that its members—Bill Briggs, Johnny Brown, Cervera Davis, Robert Anthony, Louie Hobson, and Gladys J. Bryant—all of whom submitted affidavits, were active members and in attendance at the time of the January 27, 2014 monthly meeting. The Board asserts that each Board member, in the member's affidavit, attested to the member's personal knowledge and observations of the actions taken by the Board during the meeting, as well as to the member's personal knowledge and position relating to Gibbs's employment with the Water Association. The Board contends that each Board member acknowledged not only "the truth and correctness of the facts," but also the circumstances surrounding Gibbs's employment with the Water Association. The Board also contends that, although Board member Danny Simon was not a Board member, or in attendance at the meeting, at the time that Gibbs was hired, Simon was the administrator of the Board when Gibbs was hired and that he had knowledge of Gibbs's position. The Board further contends that Gibbs received a certified, signed copy of the minutes from the January

7

27, 2014 meeting.[5]

¶14.　It is well established that Mississippi adheres to the common law doctrine of employment at will. *Kelly v. Miss. Valley Gas Co.,* 397 So. 2d 874, 874 (Miss. 1981). Under the doctrine of employment at will, either an employer or an employee may terminate an employment relationship, unless the parties are bound by an employment contract or a contract detailing the term of employment. *Perry v. Sears, Roebuck & Co.,* 508 So. 2d 1086, 1088 (Miss. 1987). However, the Mississippi Supreme Court in *McArn v. Allied Bruce-Terminix Co.,* 626 So. 2d 603, 607 (Miss. 1993), and in *Bobbitt v. The Orchard, Ltd.,* 603 So. 2d 356, 357 (Miss. 1992), has established two instances when the employment at will doctrine will be abrogated: (1) where an employee has been fired for refusing to follow the employer's instructions to participate in illegal activity or for exposing illegal activity within the workplace (the public policy exception); and (2) where

> an employer publishes and disseminates to its employees a manual setting forth the proceedings which will be followed in event of an employee's infraction of rules, and there is nothing in the employment contract to the contrary, then the employer will be required to follow its own manual in disciplining or discharging employees for infractions or misconduct specifically covered by the manual.

*Bobbitt*, 603 So. 2d at 357. However, if the employer publishes a disclaimer within the employee manual advising that "nothing in the manual affects the employer's right to terminate the employee, then the employee's at-will status remains intact." *Senseney v. Miss. Power Co.,* 914 So. 2d 1225, 1229 (¶9) (Miss. 2005) (internal citation omitted). In

---

[5] We note that the copy of the January 27, 2014 meeting's minutes contained within the record is neither signed nor certified.

addition, this Court has previously found that "if an employee handbook does not provide exclusive permissible grounds for discharge, it is unreasonable for an employee to believe that he may be terminated only for cause." *Id*. Moreover, "Mississippi follows the common law rule that an employee hired for an indefinite term may be discharged for any reason at the will of his employer." *Davis v. Biloxi Pub. Sch. Dist.,* 937 So. 2d 459, 461-62 (¶7) (Miss. Ct. App. 2005).

¶15. Here, Gibbs admitted in his responses to the Board's requests for admissions that there was no written contract between himself and the Board. The applicable requests for admissions and responses read as follows:

> **REQUEST NO.1:** Admit that there was no written employment agreement between you and Porterville Water Association.
>
> **RESPONSE TO REQUEST NO. 1:** I agree with admission number 1 of the defendant there was no written contract[;] it was oral or verbal.
>
> * * * *
>
> **REQUEST NO. 7:** Admit that the Defendant did not enter into a written agreement with you to retain you for the entirety of your water operator[-]certification process.
>
> **RESPONSE TO REQUEST NO. 7:** I agree with admission number 7 of the defendant only to the extent that the agreement wasn't written.

¶16. Additionally, during the summary-judgment hearing, the circuit judge asked Gibbs, "And is there a different position as to whether there is a written contract of employment here that changes the common law at-will employment status?" In response, Gibbs's trial counsel asserted, "It was an oral contract, Your Honor. And the [Board] in this case took actions that induced my client to rely on a promise they made to him that he would be - - that they were

9

hiring him as a full-time [c]lass[-D] water operator." The circuit judge then followed up by stating, "I mean, it seems to me in the answers to the requests for admissions it is admitted that it was kind of an open-ended employment contract; it could have lasted a long time, it could have been relatively a short period of time." Gibbs's trial counsel agreed, and the circuit judge followed with, "So then it seems like to me a contract that is going to - - has a potential to last longer than a year has to be in writing, doesn't it, to be enforceable . . . ?" Gibbs's trial counsel responded by asking, "Are you saying there is no room in this case for estoppel, [that] they cannot be prevented or estopped from fulfilling the contract they made with my client? He has suffered a detriment."

¶17. It was also established during the summary-judgment hearing that Gibbs's employment with the Water Association was for an indefinite time period to be determined by the Board. As previously mentioned, the Board presented a handwritten letter from Gibbs at the summary-judgment hearing, wherein Gibbs acknowledged that the start and end dates of his employment were to be determined by the Board. Although Gibbs acknowledged that "he understood that the Board had the privilege or the right to fire him as they saw fit," he argued that he never acknowledged any awareness that he was being hired on a "temporary basis." The circuit judge informed Gibbs that the statute of frauds requires that a contract extending beyond a year be in writing and that he had a more viable remedy in unemployment compensation.[6]

---

[6] We note that the circuit judge also went on to explain that Gibbs was pursuing an equitable argument within a circuit court, where he was asking for money damages. The circuit judge stated:

¶18.   We find that, pursuant to the laws of the state of Mississippi, Gibbs was an at-will

employee.  As a result, while the Board did not assert any reason for terminating Gibbs's

employment, it did not have to have a reason, and the termination was not unlawful,

notwithstanding what Gibbs's expectations may have been.  As such, there are no genuine

issues of material fact, and the circuit court did not err in granting summary judgment in

favor of the Board.  This issue is without merit.

¶19.   **THE JUDGMENT OF THE CIRCUIT COURT OF KEMPER COUNTY IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, FAIR AND GREENLEE, JJ., CONCUR.  CARLTON, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY FAIR, J.  WILSON, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  JAMES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**

**CARLTON, J., SPECIALLY CONCURRING:**

¶20.   I concur in result with the majority.  My review of the record reflects that Gibbs

claimed in his complaint that he was wrongfully terminated because he expressed an intent

to run for the public office of county supervisor.  I submit that Gibbs's complaint does not

---

If we are talking about equitable relief, you get that in chancery court.  Maybe a chancellor could enjoin them from - - I don't think they would even have authority to do that.

I mean . . . it is my responsibility and a law court is to enforce the law as I understand it.  And it seems to be pretty clear that the law is that we have got an at-will employment, and it can be terminated either by Mr. Gibbs or by the Porterville Water Association, either one of them, at any time for good reason, bad reason, no reason at all.  There is no contract that changes the law, and that is the law.  And an allegation of an oral contract in this case is . . . unenforceable because of the statute of frauds.

11

claim wrongful termination due to his military service. Mississippi Code Annotated section 33-1-15 (Rev. 2010) specifically prohibits employment discrimination against current or former members of any reserve component of the Armed Forces of the United States. The record reflects that the Board failed to provide any reason at all for Gibbs's termination because he constituted an at-will employee with no written contract.

¶21.    I agree with the majority that the employment-at-will doctrine applies since no written contract existed between the parties. *See Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So. 3d 216, 218 (¶5) (Miss. 2015). Precedent reflects that, where the employment relationship is "at-will," then the employee may be terminated for any reason, except reasons independently declared legally impermissible. *Galle v. Isle of Capri Casinos Inc.*, 180 So. 3d 619, 622 (¶13) (Miss. 2015). In *Community Care Center*, the Mississippi Supreme Court explained "that claims of wrongful discharge in violation of public policy are independent tort actions" based upon an employer's duty not to thwart the public interest through termination. *Cmty. Care Ctr.*, 160 So. 3d at 219-20 (¶¶12, 14). The supreme court rejected the "argument that such claims are based on an unwritten employment contract." *Id.* at 220 (¶13). Instead, the supreme court held in *Community Care Center* that an action for wrongful discharge in violation of public policy constitutes an independent tort action arising from the employer's violation of declared public policy and not from an unwritten contract. *Id.* at 219-20 (¶¶12-14).[7]

_____

[7] *See and compare Cash Distrib. Co. v. Neely*, 947 So. 2d 286, 293-94 (¶¶23-27) (Miss. 2007) (addressing the burden of proof applicable to show nondiscriminatory reasons for termination). *See also* Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4335 (2012) (establishing that federal statutes also prohibit

¶22.  Since Gibbs's complaint failed to allege wrongful termination based upon military service, we need not determine today whether an independent tort action arises from the Board's conduct.  Because Gibbs's complaint did not allege that he was wrongfully terminated for an independently declared impermissible reason that violates public policy, then I concur in result with the majority.

**FAIR, J., JOINS THIS OPINION.**

---

employment discrimination against members of the United States Armed Forces).