KING, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 44. I agree that affirming the trial court is appropriate for the majority of the claims in this case; however, because I believe that the wrongful termination claims should survive, I respectfully concur in part and dissent in part.
 

 ¶ 45. The Collinses argue that the Newton Fire Department Standard Operating Guidelines ("Guidelines") provide an exception to the at-will employment doctrine. One exception to the at-will doctrine is where an employee manual creates a contractual obligation.
 
 Bobbitt v. Orchard, Ltd.
 
 ,
 
 603 So.2d 356
 
 (Miss. 1992).
 

 ¶ 46. Donald Collins testified that he signed something stating he would follow the Guidelines, that he was familiar with some of the Guidelines, and that the standard procedure for terminating a firefighter, paid or volunteer, was to issue oral and written warnings first.
 
 [3]
 
 He also testified that he had received Christmas bonuses, but did not receive regular compensation
 or benefits. Lisa testified that the volunteers had a certain procedure that was followed to hire and terminate volunteers, and that procedure was not followed with her termination. She further testified that she had applied for permanent positions with the Fire Department and had been passed over for males, despite scoring higher than the males on both physical and written assessments. When she was terminated as a volunteer, she was in the process of obtaining her official certification as a volunteer firefighter with the Fire Academy, and was unable to continue that. She also testified that her plan was to be a full-time firefighter, and that "you need to have experience as a volunteer to be high on a list of getting hired as a full-time employee with the Fire Department. The more experience you have as a volunteer, the better your chances."
 

 ¶ 47. Donnie testified that the Fire Department followed the disciplinary procedures in the Guidelines for terminating personnel and that it was communicated to the firefighters that these were the rules the Fire Department and its personnel abided by. Colt also testified that the procedure for termination included a verbal and then a written warning, then suspension, then termination.
 

 ¶ 48. The City of Newton Employee Policy Handbook ("Handbook") provides that "NO STATEMENT IN
 
 THIS POLICY GUIDE
 
 SHOULD BE INTERPRETED AS A CONTRACT OF EMPLOYMENT BETWEEN YOU AND THE CITY OF NEWTON." (Emphasis added.) At least two other provisions provide that employment with the City is at-will, with one stating that employees "work at the will of the governing authorities of the City. Discretion to hire and fire is vested in the Department Heads, i.e. the City Clerk, Chief of Police, and Director of Public Works, subject to approval by the Mayor and Board of Aldermen."
 

 ¶ 49. The Guidelines state that their purpose is "To establish Rules and Regulations for the personnel of the Newton Fire Department that are particular to the Fire Department and which are not included in the City of Newton Personnel Rules and Regulations, and federal or state regulations and statutes." The Guidelines apply to all Fire Department personnel, with personnel including "all persons, uniformed and non-uniformed, volunteers and employed by the City of Newton Fire Department." The Guidelines require all personnel to obey all laws, rules, regulations, ordinances, and orders, "and any violations may be sufficient cause for
 
 disciplinary action
 
 ." (Emphasis added.) They provide that non-compliance with the department rules and regulations "will not be tolerated" and that "[t]hose personnel committing such infractions will be subject to
 
 disciplinary actions
 
 ." (Emphasis added.) The Guidelines then outline "Standardized Disciplinary Actions." For tardiness, uniform violation, safety violation, and all other general rules and regulations violations, "to be issued for individual violations with no more than 12 during a career[,]" the first offense receives a "[d]ocumented verbal warning/coaching/counseling session." A second offense receives a "[w]ritten reprimand." The third offense receives one "shift suspension without pay." The fourth offense warrants suspension without pay for three shifts. The fifth offense receives termination. Other disciplinary procedures are outlined for fighting and DUI. Nothing in the provisions of the Guidelines placed in the record
 
 [4]
 
 contains an express disclaimer
 that the Guidelines did not affect the employer's right to terminate the employee at will. Nor does the Handbook contain an express disclaimer that other policy documents outside the Handbook itself would not affect the employer's right to terminate the employee at will.
 

 ¶ 50. In
 
 Bobbitt
 
 , the Court emphasized that the employee manual containing the disciplinary procedures did not contain any "express disclaimer or contractual provision that the manual did not affect the employer's right to terminate the employee at will[.]"
 
 Bobbitt
 
 ,
 
 603 So.2d at 362
 
 . In this case, nothing in the record indicates that the Guidelines expressly reserve the right to terminate the employee at will. Moreover, the Handbook only provides that nothing in that particular employee handbook affects the at-will nature of the employment. It did
 
 not
 
 expressly state that any other department policies or guidelines would similarly not affect the at-will employment. In
 
 Bobbitt
 
 , the employer pointed to a sentence in the application for employment that stated "I understand that the first three months of employment will be considered as a period of probation and that my employment and compensation may be terminated with or without notice at any time...."
 

 Id.
 

 at 362 n.1. The Court found that "[t]his sentence, at the very best, creates for [the employer] an ambiguity from which it will argue at full trial that it applied to long time employment and not just the first ninety days. The ambiguity itself, however, removes this case from a summary judgment posture[.]"
 

 Id.
 

 ;
 
 cf.
 

 Senseney v. Miss. Power Co.
 
 ,
 
 914 So.2d 1225
 
 (Miss. Ct. App. 2005) (The exception did not apply to personnel guidelines regarding discipline where the employment application explicitly stated that "I also understand and agree that nothing in this employment application, in the Company's policy statements, personnel guidelines or employee handbook is intended to create ... an employment contract between the Company and me. I understand and agree that employment with the Company will be on an at-will basis[.]" The court noted the
 
 express
 
 disclaimer, with the application specifically referring to the personnel guidelines that contained the disciplinary procedures.).
 

 ¶ 51. "[T]he general rule is that where a contract is ambiguous and uncertain, questions of fact are presented which are to be resolved by the trier of facts, and the granting of summary judgment is inappropriate."
 
 Shelton v. American Ins. Co.
 
 ,
 
 507 So.2d 894
 
 , 896 (Miss. 1987). The Handbook does not explicitly reserve the right to terminate employment at will with regard to the Fire Department Guidelines or any other documents outside of the handbook itself. And the provisions of the Guidelines placed into the record before this Court do not explicitly reserve the right to terminate at will. The Guidelines applied to all personnel, compensated and volunteer.
 
 [5]
 
 On the record before the Court, whether the Guidelines created a contract or whether the right to terminate at will was effectively reserved is ambiguous. It is likely that consideration of extrinsic evidence is necessary, and "resolution of any uncertainties will be against the drafter of the contract[,]" which in this case is the City.
 
 Dalton v. Cellular South, Inc.
 
 ,
 
 20 So.3d 1227
 
 , 1232 (Miss. 2009).
 

 ¶ 52. A plaintiff need not prove his case to survive summary judgment; he need only create a genuine issue of material fact. Neither the Handbook nor the Guidelines specifically refer to one another. As such, when construing the evidence in the light most favorable to the Collinses, a genuine issue of material fact exists as to whether the Guidelines created a contract and thus whether Donnie, Colt, Donald, and Lisa had a right to the disciplinary procedures outlined in the Guidelines. Therefore, summary judgment on the wrongful termination claims was inappropriate, and I would reverse the trial court on this issue.
 

 KITCHENS, P.J., JOINS THIS OPINION.
 

 The defendants did ask Donald about some Fire Department "Rules and Regulations" that allegedly provide that volunteers can be terminated at any time. However, these rules and regulations are not in the record. The defendants also cite in their brief to a Guideline provision requiring that Fire Department personnel acquaint themselves with the City of Newton rules and regulations, yet, that Guideline provision is not in the record.
 

 It appears that only portions of the Guidelines were placed in the record, rather than the complete Guidelines. If the complete Guidelines contain such an express disclaimer, certainly it was incumbent upon the defendants to place a complete copy in the record.
 

 I am skeptical of the argument that a volunteer may have a successful wrongful termination claim; however, the documents in the record before this Court contain an ambiguity that creates a material issue of fact to determine whether these volunteers had any contractual rights regarding their volunteer positions. Volunteers had to follow the Guidelines, and many volunteers apparently regarded volunteering as a path to paid employment.