# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-CA-00825-SCT

*GENE JONES, ASHLEY CRAFT, RALPH SCOTT,*
*HARDY GORDON, JAMES WILLIAMS AND*
*REGGIE WILLIAMS*

*v.*

*FLUOR DANIEL SERVICES CORPORATION*


| | |
|---|---|
| DATE OF JUDGMENT: | 03/22/2005 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | JASPER COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | THOMAS QUITMAN BRAME, JR. |
| ATTORNEY FOR APPELLEE: | STEVE J. ALLEN |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 06/21/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     This case comes to this Court on appeal from the Jasper County Circuit Court's grant

of Fluor Daniel Services Corporation's Motion for Summary Judgment dismissing the

plaintiffs' claims of breach of covenant of good faith and fair dealing, wrongful termination,

and intentional infliction of emotional distress with prejudice. We affirm in part and reverse

and remand in part.

## FACTS

¶2.     The plaintiffs in this case, all black males, were employees of Fluor Daniel Services Corporation (Fluor Daniel) in the late summer and early fall of 2001.  While under Fluor Daniel's employ, the plaintiffs worked directly for a supervisor named Rudy Amaro.[1]  The plaintiffs allege a number offenses were committed by Amaro, but the crux of this action was based on one incident.

¶3.     Before each workday, Amaro would meet with all of his laborers and give them their assignments and instructions for the day.  From the deposition testimony, it seems as though the crew under Amaro consisted of mostly black and Mexican men.[2]  Amaro would give instructions to the black laborers first in English, and then he would give the Mexican workers their instructions in Spanish.  The deposition testimony as to what exactly transpired on the day in question differs in slight detail from plaintiff to plaintiff, but it is undisputed that while giving the Mexican workers their instructions in Spanish, Amaro said the word "monkey" in English.  All of the plaintiffs testified that they heard this.  Gene Jones confronted Amaro, asking him to repeat what he had said.  After resisting momentarily, Amaro admitted to having said something along the lines of "the monkeys could go to work or go to the rope."  All of the plaintiffs testified that after revealing what he had said to the Mexicans in Spanish, Amaro told them that someone in the office had told him to say that. The plaintiffs believed that this was a racial slur being used in a joke at their expense.

---

[1] Amaro was a named defendant in this action, but he was never served.

[2] It is also clear that Amaro himself was Mexican.

2

¶4.    Jones was terminated several days after the "monkey" incident. It was his belief that he was terminated because he confronted Amaro and because he complained to other supervisors about Amaro's comment. James Williams, who was fired around the same time as Jones, also testified that he believed that he was terminated "because [Amaro] thought [Williams] had went to the office on him."

¶5.    Reggie Williams was laid off in February 2002. He admitted in his deposition that he was laid off because there was no work for him to do. However, he was rehired by Fluor Daniel on another project some months later. He claims that his ultimate termination was due to his complaints about Amaro's behavior.

¶6.    Hardy Gordon, Ralph Scott and Ashley Craft were also terminated months after the incident. Gordon admitted that his quality of work has been consistently criticized and that his termination might have been due to that. Scott claims that he was fired because he complained about Amaro's behavior, but offered no evidence to back up his assertion. Craft testified that he never complained to anyone about Amaro's behavior and that all of the complaints that he had were about the job itself and those were addressed to Amaro. When asked why he thought he was terminated, his answers revealed that he was unsure.

¶7.    In addition to this incident, all six plaintiffs complained of other alleged racially-motivated actions on the part of Amaro and Fluor Daniel. The main complaint mentioned throughout the depositions was that the black workers were often separated from the Mexican workers. The plaintiffs also believed that they were given harder jobs than their Mexican counterparts. Additionally, there were complaints about not giving black employees their paychecks until the end of the day when the other workers were allegedly given their

paychecks earlier in the day. The plaintiffs generally allege that favoritism was shown to the Mexican workers and that the black employees were treated unfairly because of their race.

## COURSE OF PROCEEDINGS

¶8. This action was commenced on April 4, 2003, in the Circuit Court of Jasper County. On October 30, 2003, a Second Amended Complaint was filed. Depositions were taken of all six plaintiffs, and thereafter, Fluor Daniel moved for summary judgment. The Circuit Court of Jasper County issued a written opinion and order granting Fluor Daniel's motion on March 22, 2005, and final judgment with prejudice was entered that same day. This appeal was filed on April, 9, 2005.

## STANDARD OF REVIEW

¶9. It is well-settled that this Court applies a de novo standard of review to the grant or denial of summary judgment by a trial court. **Leffler v. Sharp**, 891 So. 2d 152, 156 (Miss. 2004). Considered in the light most favorable to the nonmoving party, if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. Miss. R. Civ. P. 56(c); **Russell v. Orr**, 700 So. 2d 619, 622 (Miss. 1997).

## DISCUSSION

### I. WHETHER THE CIRCUIT COURT ERRED IN DISMISSING THE PLAINTIFFS' WRONGFUL DISCHARGE CLAIMS.

¶10. It is undisputed in this case that the plaintiffs were at-will employees of Fluor Daniel. An at-will employment contract may be terminated at any time, by either party to the contract. However, two narrow exceptions exist to this longstanding, common-law rule.

4

Where an employee is terminated because: (1) he or she has refused to participate in an illegal activity, or (2) he or she has reported an illegal activity of the employer to the employer or to anyone else, a suit for wrongful discharge may be maintained despite the at-will status of the employee. *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845 (Miss. 2001). The plaintiffs claim that the latter of these two exceptions applies in this case.

¶11. Plaintiffs claim that they were discharged for reporting the illegal activities of Fluor Daniel. In support of this allegation, the plaintiffs cite two statutes which they claim Fluor Daniel violated. The first of these is a disturbance of the peace statute, Miss. Code Ann. § 97-35-15 (Rev. 2006).[3] The second is a provoking breach of peace statute, Miss. Code Ann. § 97-35-3 (Rev. 2006).[4] The plaintiffs claim that the alleged conduct of Rudy Amaro violated these statutes, that each of them was terminated for reporting that conduct, and therefore, the exception to the at-will employment doctrine should apply.

---

[3] "(1) Any person who disturbs the public peace, or the peace of others, by violent, or loud, or insulting, or profane, or indecent, or offensive, or boisterous conduct or language, or by intimidation, or seeking to intimidate any other person or persons, or by conduct either calculated to provoke a breach of the peace, or by conduct which may lead to a breach of the peace, or by any other act, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than Five Hundred Dollars ($ 500.00) or by imprisonment in the county jail not more than six (6) months, or both. . ."

[4] "(1) Whoever with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby: . . .

(b) Insults or makes rude or obscene remarks or gestures, or uses profane language, or physical acts, or indecent proposals to or toward another or others, or disturbs or obstructs or interferes with another or others. . ."

5

¶12.    In support of their claim, Plaintiffs cite *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993).  In *McArn*, the plaintiff, a former at-will employee of Terminix, alleged that he was terminated because he reported conduct of Terminix which constituted a crime under Miss. Code Ann. § 97-19-39 (Rev. 2006) and Miss. Code Ann. § 69-23-19 (Rev. 2005).[5]  The plaintiff claimed that he was  required to falsify reports and that he was required to charge customers the full price for treatment and tell them it was complete when he and the company both knew that the treatment was incomplete and not up to the required standards. *Id.* at 605.  This Court reversed the summary judgment in favor of Terminix and remanded the issue of wrongful discharge to the trial court. *Id.*  at 607.

¶13.    As in *McArn*, the "reporting of illegal acts" exception to the at-will employment doctrine has been applied only when the illegal act actually had something to do with the business itself. *See **Willard v. Paracelsus Health Care Corp.***, 681 So. 2d 539 (Miss. 1996) (employees fired for reporting forgeries and financial irregularities in business records).  In this case, even if it was found that Amaro had violated one of the statutes cited by the plaintiffs, this issue does not rise to the level necessary to fit into the very narrow exceptions to the employment-at-will doctrine. The alleged "breach of the peace" had nothing to do with the business of Fluor Daniel.

¶14.    Furthermore, there is no evidence that Amaro's conduct was reported *because* it was illegal.  The deposition testimony makes very clear that Amaro's comments and behavior merely bothered the plaintiffs, not that they ever considered the conduct to be criminal.  We

---

[5] *McArn*, 626 So. 2d at 606.  These statutes deal with receiving money under false pretenses and violating state pest control regulations.

find that this is not a situation which would merit an exception to the longstanding employment-at-will doctrine.  Therefore, this issue has no merit.

## II. WHETHER THE CIRCUIT COURT ERRED IN DISMISSING PLAINTIFFS' FEDERAL LAW CLAIMS.

¶15. On appeal, the plaintiffs assert that the trial court erred in dismissing their federal law claims.  However, the plaintiffs did not assert any federal law claims in their second amended complaint, and the trial court expressly noted this fact.  We do not consider issues raised for the first time on appeal.   Accordingly, we decline to address this issue. *Anglin v. Gulf Guaranty Life Ins. Co.*, No. 2005-CA-02082-SCT Miss. LEXIS (2007) (citing *Alexander v. Daniel*, 904 So. 2d 172, 183 (Miss. 2005))

## III. WHETHER THE CIRCUIT COURT ERRED IN DISMISSING PLAINTIFFS' CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

¶16. The plaintiffs allege that a number of acts by Fluor Daniel warrant recovery for intentional infliction of emotional distress.  The main actions, as portrayed in the depositions, include: Amaro saying that "the monkeys could go to work or go to the rope;" segregation of black and Mexican employees; and requiring the black workers to do harder manual labor than the Mexican laborers.  Some of the plaintiffs claim that this conduct by Fluor Daniel caused them distress which has manifested itself in physical injury, including sleepless nights, headaches, depression, and sexual difficulty.  However, even without physical manifestation of an emotional injury, some of the conduct of Amaro and Fluor Daniel may rise to the level necessary to maintain an action for intentional infliction of emotional distress.

¶17.    In *Smith v. Malouf*, this Court stated that:

> [w]here there is something about the defendant's conduct that evokes outrage or revulsion, done intentionally–or even unintentionally yet the results being reasonably foreseeable–courts can in certain circumstances comfortably assess damages for mental and emotional distress even though there has been no physical injury.  In such instances, it is the nature of the act itself–as opposed to the seriousness of the consequences–which gives impetus to legal redress.

722 So. 2d 490, 497 (Miss. 1998) (citing *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So. 2d 648, 658 (Miss. 1995)).  This Court must look at the nature of the acts of Fluor Daniel as alleged by the plaintiffs and decide whether they evoke outrage or revulsion.

¶18.    We must answer the question of whether a reasonable juror could find that Amaro's comment to a group of black workers ("you monkeys can go to work or go to the rope") was patently a racial slur constituting outrageous and revolting conduct.

¶19.    This Court has dealt with issues of racism in a work environment before.  In *Richmond v. Mississippi Department of Human Services*, this Court was faced with the question of whether an employee's use of the word "nigger" in reference to a black coworker created a hostile work environment and merited that employee's dismissal.  *Richmond*, 745 So. 2d 254 (Miss. 1999).  Part of the employee's defense was that she was using the term in a joking manner and that workers in that particular office often joked about racial issues. *Id.* at 262 (Banks, J., concurring in part and dissenting in part).  While not directly on point with the case at bar, language in Justice Banks's separate opinion does offer guidance: "While the alleged joking in the DeSoto County office regarding the differences between black and white people may not in and of itself be enough to constitute a racially hostile environment, when coupled with the racial slur or slurs uttered by Bonnie Richmond, such conduct may

8

have been enough to do so." *Id.* (internal citation omitted).  Returning to the case at bar, we note that referring to a group of black employees as "monkeys," while terrible on its own, could possibly be passed off as a tasteless joke.  However, as in **Richmond**, that insult coupled with an apparent reference to lynching could permit a reasonable juror to conclude that this comment was outrageous and revolting. *Id.* at 262.

¶20.    We also note that several of our sister states have addressed such issues.  In **Taylor v. Metzger**, the New Jersey Supreme Court addressed whether an employer's use of the term "jungle bunny" against a black employee rose to the level of extreme and outrageous conduct. **Taylor**,152 N.J. 490 ( N.J. 1998).  The Court stated, "[w]e do not hold that a single racial slur spoken by a stranger on the street could amount to extreme and outrageous conduct.  But, a jury could reasonably conclude that the power dynamics of the workplace contribute to the extremity and the outrageousness of the defendant's conduct." *Id.* at 511.  "Therefore, the fact that defendant uttered only one slur toward plaintiff does not, as a matter of law, preclude his conduct from being extreme and outrageous." *Id.* at 512.

¶21.    The Louisiana Supreme Court also has pointed out the special circumstances of incidents arising between supervisors and employees in the workplace: "A plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger." **White v. Monsanto Co.**, 585 So. 2d 1205, 1210 (La. 1991).  Other jurisdictions have dealt with similar issues. *See* **Contreras v. Crown Zellerbach Corp.**, 565 P.2d 1173, 1176 (Wash. 1977) (stating that one in position of authority over another making racial slurs and jokes gives added impetus to claim of outrageous behavior).

9

¶22. Fluor Daniel claims that the plaintiffs have offered no admissible evidence of vicarious liability on the part of Fluor Daniel for the comment made by Rudy Amaro. However, the plaintiffs claim that, immediately after making the comment, Amaro said that someone in the main office had told him to make the statement. Fluor Daniel argues that Amaro's statement is hearsay and would not be admissible at trial. However, we find that Amaro's statement would be admissible under M.R.E. 801(d)(2)(D) as an admission by a party opponent. Therefore, viewing this evidence in the light most favorable to the plaintiffs, as we must, we find evidence sufficient to defeat a motion for summary judgment on this issue.

¶23. The allegations of segregation of black and Mexican workers also present an issue to be considered. Certainly, there could be good reason for separating these groups of workers; the Mexicans spoke very little English, and it might have been easier just to let them work in separate groups. However, the record reflects that the plaintiffs also testified that they were forced to work harder jobs than the Mexican workers. If this is true (and for the purposes of summary judgment we must view the evidence in the light most favorable to the plaintiffs), this also could rise to the level of outrageous conduct. A jury could reasonably conclude that showing a preference for one race at the expense of another is outrageous conduct.

¶24. In viewing the record in its entirety in the light most favorable to the plaintiffs, we find there is enough evidence to maintain a cause of action for intentional infliction of emotional distress. A reasonable juror could conclude that Amaro's actions were intentional

10

and the results reasonably foreseeable. We hold that the plaintiffs should be afforded their day in court.

## CONCLUSION

¶25. We find that the trial court erred in granting summary judgment as to the plaintiffs' intentional infliction of emotional distress claims. Therefore, the judgment of the Circuit Court of Jasper County is reversed with respect to that claim and this case is remanded in part for proceedings on that claim consistent with this opinion. The trial court's judgment is affirmed in all other aspects.

¶26. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**WALLER, P.J., CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. DIAZ, P.J., CONCURS IN RESULT ONLY. EASLEY, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**