# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CA-00827-SCT

*BRITTANY SPIERS*

*v.*

*OAK GROVE CREDIT, LLC, COLUMBIA CREDIT, LLC AND PINE BELT CREDIT, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/09/2020 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| TRIAL COURT ATTORNEYS: | DANIEL M. WAIDE |
| | STACEY MOORE BUCHANAN |
| | MARY MARGARET SPELL |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DANIEL M. WAIDE |
| ATTORNEYS FOR APPELLEES: | LINDSAY THOMAS DOWDLE |
| | STACEY MOORE BUCHANAN |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 11/18/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     This matter comes before the Court on appeal from an order by the Circuit Court of Lamar County both denying Brittany Spiers leave to amend her complaint and granting the motion to dismiss filed by Oak Grove Credit, LLC (OGC), and other companies, including, Columbia Credit, LLC, Pine Belt Credit, LLC, and "John Does Business 1-5" (collectively, "the Creditor Companies"). We affirm the circuit court's order dismissing the state-law

claims, but we reverse the circuit court's order to the extent it denied Spiers leave to amend her complaint. Accordingly, we remand the case for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2.     Spiers worked for OGC, a creditor business located just outside Hattiesburg, Mississippi, until February 2019. At that time, OGC terminated Spiers for reasons Spiers alleged were discriminatory. According to Spiers, OGC terminated her because of her gender and her pregnancy. Specifically, Spiers alleged that her supervisor raised concerns about her pregnancy in regards to work and childcare and even called her pregnancy a "disease." Spiers also alleged that her supervisor declined to hire another person because that person was pregnant.

¶3.     On February 7, 2020, Spiers filed her complaint in the circuit court, primarily alleging pregnancy and sex discrimination under Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e to 2000e-17 (2012).[1] Even though Spiers only worked for OGC, she brought her lawsuit collectively against OGC and the Creditor Companies because she alleged that these companies "constitute an integrated enterprise/joint employer in relation to Spiers as employees from each location are fluid and work for and between the sister companies." Alternatively, Spiers alleged that "the Defendant's actions constitute the torts of negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, termination in violation of public policy, gross negligence, and negligent supervision."

¶4.     After Spiers filed her complaint, OGC and the Creditor Companies filed a notice of

---

[1] Prior to Spiers's filing her complaint, the United States Equal Employment Opportunity Commission (EEOC) issued Spiers a notice of her right to sue.

removal to the United States District Court for the Southern District of Mississippi. On May 8, 2020, the federal district court issued an order as to Spiers's Title VII claim, finding that Spiers "did not plead sufficient facts for the Court to infer that Defendants meet Title VII's definition of an employer."[2] The district court "dismiss[ed] Plaintiff's Title VII claims without prejudice." The district court, however, "declin[ed] to exercise pendent jurisdiction over Plaintiff's remaining state-law claims and remand[ed] the case [back] to the Circuit Court of Lamar County, Mississippi."

¶5.     Upon remand to the circuit court, Spiers filed a motion for leave to amend her complaint. In her proposed amended complaint, Spiers added more defendants she deemed constituted "an integrated enterprise" and therefore "qualif[ied] as employers under Title VII and the Pregnancy Discrimination Act." These additional companies include Panther Credit LLC and Personal Finance LLC. Specifically, Spiers alleged the following facts in her proposed amended complaint:

Employees work, train and supervise multiple locations. In addition, [a]ll

---

[2] In his order, Judge Starrett reasoned:

For an employer to be subject to liability under Title VII, the employer must employ "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 42 U.S.C. § 2000e(b). This numerosity requirement is "an element of a plaintiffs claim to relief" under Title VII that must be proven at trial. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516, 126 S. Ct. 1235, 163 L. Ed. [2d] 1097 (2006). Therefore, a Title VII plaintiff must plead facts demonstrating that the defendant constitutes an "employer" as defined by the statute. *Prystawik v. BEGO USA*, 2013 WL 2383680, at *2 (D. R.I. May 30, 2012); *Dixon v. Primary Health Servs. Center*, 2011 WL 1326841, at *2 (W.D. La. Mar. 3, 2011); *Morrow v. Keystone Builders Resource Group, Inc.*, 2010 WL 3672354, at *7 (D. S.C. Sept. 10, 2010).

3

> Defendants share the same management and directors. Upon information and belief, bank accounts and funds are fluid and are moved between companies as different needs arise in different areas. All of the Defendants' finances, management, and labor relations are centrally controlled.

In making these changes, Spiers attempted to address the factual deficiency of her original complaint that underpinned the federal district court's basis for dismissing her Title VII claim.

¶6. Shortly after Spiers moved to amend, OGC and the Creditor Companies moved to dismiss Spiers's original complaint. In their motion, OGC and the Creditor Companies noted the dismissal of the Title VII claim by the federal district court and argued that the remaining state-law claims must also be dismissed for failure to state a claim. Specifically, OGC and the Creditor Companies argued that (1) Spiers's negligence claims are barred by the exclusivity provisions of the Mississippi Workers' Compensation Act; (2) Spiers's termination cannot serve as basis for an intentional-infliction-of-emotional-distress claim; and (3) Spiers's wrongful-termination claim cannot succeed because no relevant public-policy exception exists under the employment-at-will doctrine.

¶7. The circuit court held a hearing on both motions. After the hearing, the circuit court ruled from the bench in favor of OGC and the Creditor Companies. The circuit court reasoned that in making its decision it was refusing "to be an activist judge" and that "[t]his matter simply doesn't fit the current law." Then, on July 9, 2020, the circuit court entered its order denying Spiers's motion for leave to amend the complaint and granting OGC and the Creditor Companies' motion to dismiss the complaint with prejudice.

¶8. Aggrieved, Spiers appeals.

## ISSUES PRESENTED[3]

¶9.     On appeal, the parties have raised the following issues:

   I.      Whether the circuit court erred by denying the motion for leave to amend the complaint regarding the Title VII discrimination claim.

   II.     Whether the circuit court erred by granting the motion to dismiss regarding the state-law claims.

## STANDARD OF REVIEW

¶10.     "The trial court's denial of a motion to amend a complaint is subject to an abuse of discretion standard of review." *Taylor Mach. Works, Inc. v. Great Am. Surplus Lines Ins. Co.*, 635 So. 2d 1357, 1362 (Miss. 1994) (citing *Broadhead v. Terpening*, 611 So. 2d 949, 953 (Miss. 1992)). Additionally, "[t]his Court reviews de novo a trial court's grant or denial of a motion to dismiss." *Johnson v. Rao*, 952 So. 2d 151, 154 (Miss. 2007) (citing *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 988 (Miss. 2004)).

## DISCUSSION

   **I.     Whether the circuit court erred by denying the motion for leave to amend the complaint regarding the Title VII discrimination claim.**

¶11.     The circuit court denied Spiers's motion for leave to amend her complaint. Spiers asserts that the circuit court erred because the proposed amended complaint alleged that OGC and the Creditor Companies qualify as an employer under Title VII. Specifically, Spiers argues that OGC and the Creditor Companies constitute an "integrated enterprise." In turn, OGC and the Creditor Companies argue that Spiers's Title VII complaint amendments cannot

---

[3] This section reflects the questions raised by the parties on appeal, but the issues as stated here have been reworded for coherence.

5

survive a motion to dismiss because those amendments are futile—that is, the amendments are conclusory allegations that merely recite the factors used to determine what constitutes an integrated enterprise.[4]  For the following reasons, we conclude that the circuit court abused its discretion by denying the motion for leave to amend the complaint.

¶12.    After the federal district court granted the motion to dismiss Spiers's Title VII claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Spiers moved in the circuit court for leave to amend her complaint.  Rule 15 of the Mississippi Rules of Civil Procedure governs motions for leave to amend a complaint and states, in part, that "*[o]n sustaining a motion to dismiss* for failure to state a claim upon which relief can be granted, . . . leave to amend shall be granted when justice so requires[.]"  M.R.C.P. 15(a) (emphasis added).[5]  Furthermore, "leave shall be freely given when justice so requires."  M.R.C.P. 15(a).

¶13.    This Court has noted "that amended pleadings have been liberally permitted throughout Mississippi's legal history."  **Webb v. Braswell**, 930 So. 2d 387, 393 (Miss. 2006).  Even still, however, the rule is not absolute:

> *In the absence of* any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility of the amendment*, etc.—the leave sought should, as the rules require, be "freely given."

---

[4] *See* **Trevino v. Celanese Corp.**, 701 F.2d 397, 404 (5th Cir. 1983) (recognizing certain factors used to determine whether entities qualify as integrated enterprises under Title VII).

[5] Here, the circuit court was free to grant Spiers leave to amend when justice so required because the federal district court sustained a motion to dismiss.  *See* M.R.C.P. 15(a).

6

*Id.* (emphasis added) (quoting ***Moeller v. Am. Guar. & Liab. Ins. Co.***, 812 So. 2d 953, 962 (Miss. 2002)).

¶14.  OGC and the Creditor Companies argue that the circuit court properly denied the motion for leave to amend the complaint because the proposed amendments were futile. Recently, our Court of Appeals provided a well-stated definition for futility of an amendment.  In ***Griffin v. CitiMortgage, Inc.***, the Court of Appeals recognized that "when the proposed 'amendment would still render the claim futile, the chancellor is well within [her] discretion to deny such request.'" ***Griffin v. CitiMortgage, Inc.***, 296 So. 3d 767, 772 (Miss. Ct. App. 2020) (alteration in original) (quoting ***Littlefield v. Littlefield***, 282 So. 3d 820, 829-30 (Miss. Ct. App. 2019) (citing ***Hartford Cas. Ins. Co. v. Halliburton Co.***, 826 So. 2d 1206, 1219 (Miss. 2001))). The Court of Appeals continued by stating that "[i]n other words, a court may deny a motion for leave to amend a complaint if the proposed amended complaint would still fail to state a claim upon which relief could be granted." ***Id.***

¶15.  To be futile, the amendment must fail to state a claim. ***Id.*** Failure to state a claim is considered under Rule 12(b)(6).  When considering a motion to dismiss for the failure to state a claim upon which relief can be granted, we are limited to review of the contents of the complaint, and "[t]he allegations in the complaint must be taken as true." ***Crum v. City of Corinth***, 183 So. 3d 847, 851 (Miss. 2016) (alteration in original) (internal quotation marks omitted) (quoting ***Rose v. Tullos***, 994 So. 2d 734 (Miss. 2008)).  What OGC and the Creditor Companies really argue is not that Spiers fails to allege a claim but, rather, that the integrated-enterprise allegation cannot be proved.  This assertion, however, is appropriate for

a Rule 56 motion for summary judgment and not an analysis under Rule 12(b)(6). *See* M.R.C.P. 12(b)(6); *cf.* M.R.C.P. 56.

¶16. Here, Spiers's proposed amended complaint alleges that OGC and the Creditor Companies constitute an integrated enterprise, thus qualifying OGC and the Creditor Companies as an employer under Title VII. As mentioned above, for an employer to be held liable under Title VII, it must satisfy a numerosity requirement; that is, the employer must employ "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year." 42 U.S.C. § 2000e(b). The United States Court of Appeals for the Fifth Circuit developed factors to determine "when separate business entities are sufficiently interrelated for an employee whose Title VII rights have been violated to file a charge against both entities." *Trevino*, 701 F.2d at 403. These factors include: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* (citing *Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391-92 (8th Cir. 1977)). If, under those factors, separate business entities are sufficiently interrelated, satisfying Title VII's numerosity requirement, then the entities are described as "a single, *integrated enterprise*[,]" and, therefore, may be exposed to Title VII liability. *Id.* (emphasis added).

¶17. Spiers attempted to satisfy Title VII by alleging that OGC and the Creditor Companies are an integrated enterprise in her proposed amended complaint. To support her integrated enterprise allegation, Spiers alleged the following facts:

> Employees work, train and supervise multiple locations. In addition, [a]ll Defendants share the same management and directors. Upon information and

8

belief, bank accounts and funds are fluid and are moved between companies as different needs arise in different areas. All of the Defendants' finances, management, and labor relations are centrally controlled.

These factual allegations are specific and address the individual integrated-enterprise prongs. Therefore, Spiers's amendments regarding her Title VII claim are not futile because her proposed amended complaint states a claim, supported by factual allegations, upon which, if proved, relief can be granted entitling Spiers to proceed to discovery. *See **Griffin***, 296 So. 3d at 772. Whether Spiers can later prove these allegations is not before the Court today. Therefore, we conclude that the circuit court abused its discretion by denying Spiers leave to amend her complaint.

## II. Whether the circuit court erred by granting the motion to dismiss regarding the state-law claims.

¶18. The circuit court dismissed Spiers's state-law claims under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure. "A rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim. . . . Therefore, we review de novo the denial of a motion to dismiss for failure to state a claim." **Bowden v. Young**, 120 So. 3d 971, 975 (Miss. 2013) (alteration in original) (internal quotation marks omitted) (quoting **Child.'s Med. Grp., P.A. v. Phillips**, 940 So. 2d 931, 933 (Miss. 2006)). "A motion to dismiss under the rule should not be granted unless, taking the factual allegations of the complaint as true, 'it appears beyond any reasonable doubt that the non movant can prove no set of facts in support of the claim which would entitle them to relief.'" ***Id.*** (quoting **Rein v. Benchmark Constr. Co.**, 865 So. 2d 1134, 1142 (Miss. 2004)). As for her state-law claims, Spiers has failed to state a claim that could entitle her to relief. We conclude that the circuit court did not err by dismissing those

9

claims.

*A.    Whether the negligence claims were properly dismissed.*

¶19.    The circuit court dismissed Spiers's four different claims of negligence (negligence, negligent infliction of emotional distress, gross negligence, and negligent supervision). OGC and the Creditor Companies contend that the negligence claims were barred by the exclusivity provisions of the Mississippi Workers' Compensation Act (MWCA), Mississippi Code Section 71-3-9 (Rev. 2011), and, therefore, the circuit court properly dismissed the negligence claims. Spiers opposes the dismissal of her negligence claims and argues that the MWCA's exclusivity provisions do not apply because OGC's actions were intentional, thus invoking an exception to the MWCA's exclusivity provisions. We find the circuit court did not err.

¶20.    Section 71-3-9, in relevant part, provides that "[t]he liability of an employer to pay compensation shall be exclusive and in place of all other liability of such employer to the employee[.] Miss. Code Ann. § 71-3-9 (Rev. 2011). "This Court repeatedly has held that, 'in order for a willful tort to be outside the exclusivity of the [MWCA], the employe[r]'s action must be done "*with an actual intent to injure* the employee."'" ***Bowden***, 120 So. 3d at 976 (alterations in original) (emphasis added) (quoting ***Griffin v. Futorian Corp.***, 533 So. 2d 461, 464 (Miss. 1988)). "[A] mere willful and malicious act is insufficient to give rise to the intentional tort exception to the exclusive remedy provisions of the [MWCA] . . . . Reckless or grossly negligent conduct is not enough to remove a claim from the exclusivity of the [MWCA]." ***Id.*** (alterations in original) (internal quotation marks omitted) (quoting

***Blailock v. O'Bannon***, 795 So. 2d 533, 535 (Miss. 2001)). In other words,

> [F]or a tort claim against an employer to fall outside the MWCA and survive Rule 12(b)(6) dismissal, *a plaintiff must allege that the actions of the employer went beyond negligence, gross negligence, or recklessness*. In order to succeed on such a claim, the plaintiff must allege and prove that the employer acted with an actual intent to injure the employee, with full knowledge that the employee would be injured and with the purpose of the action being to cause injury to the employee.

***Id.*** (emphasis added). And as this Court has stated time and time again, "few cases have escaped the Act's 'powerful grasp' of exclusivity." ***In re Estate of Gorman ex rel. Gorman v. State***, 307 So. 3d 421, 425 (Miss. 2020) (quoting ***Bowden***, 120 So. 3d at 977).

¶21. Spiers alleged four separate claims of negligence. Those claims, however, cannot escape the exclusivity of the MWCA. ***Id.***; *see also* ***S. Farm Bureau Life Ins. Co. v. Thomas***, 299 So. 3d 752, 759 (Miss. 2020) ("Their claim for negligent infliction of emotional distress is barred by the exclusivity provision of the Mississippi Worker's Compensation Act." (citing ***Bowden***, 120 So. 3d at 976)). Therefore, we conclude that the circuit court did not err by dismissing the negligence claims.

> B. *Whether the claim for intentional infliction of emotional distress was properly dismissed.*

¶22. The circuit court also dismissed Spiers's claim for intentional infliction of emotion distress. In arguing that the circuit court erred, Spiers relies heavily on ***Jones v. Fluor Daniel Services Corp.***, 959 So. 2d 1044 (Miss. 2007). We find, however, that ***Jones*** is distinguishable from today's case and, thus, Spiers's reliance on it is mistaken.

¶23. In Mississippi, liability for claims of intentional infliction of emotional distress "does not extend to 'mere insults, indignities, threats, annoyances, petty oppression, or other

11

trivialities.'"  *Collins v. City of Newton*, 240 So. 3d 1211, 1220 (Miss. 2018) (quoting

*Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996)).  And "damages for

intentional infliction of emotional distress are usually not recoverable in mere employment

disputes."  *Thomas*, 299 So. 3d at 759 (internal quotation marks omitted) (quoting *Raiola*

*v. Chevron U.S.A., Inc.*, 872 So. 2d  79, 85 (Miss. Ct. App. 2004)).  "Only in the most

unusual cases does the conduct move out of the realm of an ordinary employment dispute

into the classification of extreme and outrageous, as required for the tort of intentional

infliction of emotional distress."  *Id.*  (internal quotation marks omitted) (quoting *Prunty v.*

*Ark. Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994)).

¶24.    In *Jones*, this Court considered a claim for intentional infliction of emotional distress

made by former African-American employees against their former employer based, in part,

on racial slurs.  959 So. 2d at 1048.  In *Jones*, we reasoned:

> Returning to the case at bar, we note that referring to a group of black employees as "monkeys," while terrible on its own, could possibly be passed off as a tasteless joke.  However, . . . that insult *coupled with* an apparent reference to lynching could permit a reasonable juror to conclude that this comment was outrageous and revolting.

*Id.* at 1049 (emphasis added) (citing *Richmond v. Miss. Dep't of Hum. Servs.*, 745 So. 2d

254, 262 (Miss. 1999)).  For additional support, we looked to other cases from other

jurisdictions that involved similar facts and similar claims.  *Id.*  In each of those cases, those

courts determined that an unbalanced power dynamic between the employer and the

employee, coupled with an insult, gave rise to an intentional-infliction-of-emotional-distress

claim.  *Id.*  Ultimately, we allowed the African-American employees to pursue their

12

intentional-infliction-of-emotional-distress claim. *Id.* at 1050.

¶25.   In today's case, Spiers asserts that because OGC's supervisor referred to her pregnancy as a disease, and because OGC refused to hire another pregnant person and terminated Spiers for being pregnant, this case rises to the same level of outrageous and revolting behavior found in *Jones*.   As noted above, the Court in *Jones* permitted an intentional-infliction-of-emotional distress claim to proceed when a racially charged insult was coupled with a reference to lynching could permit a reasonable juror to conclude that this comment was outrageous and revolting.   *Id.* at 1049.   Unlike *Jones*, however, Spiers's allegations involve no such threat of violence or similar conduct.   Rather, her allegation amounts to a mere unactionable insult.   *See Collins*, 240 So. 3d at 1220 (quoting *Pegues*, 913 F. Supp. at 982).   Additionally, while *Jones* mentioned cases that involved an unbalanced power dynamic, those cases merely stand for the proposition that intentional infliction of emotional distress can arise in the workplace.   *Jones*, 959 So. 2d at 1049-50; *cf. Thomas*, 299 So. 3d at 759 ("Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress." (internal quotation marks omitted) (quoting *Prunty*, 16 F.3d at 654)).

¶26.   With respect to the dissent, we are not requiring a showing of a threat of violence for claims of intentional infliction of emotional distress. *See* CDIP Op. ¶ 45 ("However, a threat of violence is not required to support a claim of intentional infliction of emotional distress."). As a matter of fact, our reference is to a "threat of violence or *similar conduct*." (Emphasis

13

added.) As has been stated, proving intentional infliction of emotional distress in Mississippi is a "tall order." *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001) (quoting *Jenkins v. City of Grenada*, 813 F. Supp. 443, 446 (N.D. Miss. 1993)). While the statements alleged, if proved, are absolutely despicable and terribly insulting, they are still merely insults. Other courts, with similar facts and equally (and in some instances more) egregious conduct, have found the same. *See Martin v. Winn-Dixie La., Inc.*, 132 F. Supp. 3d 794 (M.D. La. 2015); *see also Pizzimenti v. Oldcastle Glass Inc.*, 666 F. Supp. 2d 839 (N.D. Ohio 2009); *Merfeld v. Warren Cnty. Health Servs.*, 597 F. Supp. 2d 942 (S.D. Iowa 2009); *Walker v. Golden Pantry Food Stores, Inc.*, No. 3:04-CV-91(CDL), 2005 WL 3179988 (M.D. Ga. Nov. 29, 2005); *Allen v. Com. Pest Control, Inc.*, 78 F. Supp. 2d 1371 (M.D. Ga. 1999).

¶27.    We conclude that "[Spiers] fail[s] to allege 'conduct . . . "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."'" *Thomas*, 299 So. 3d at 359 (third alteration in original) (quoting *Bowden*, 120 So. 3d at 980). Therefore, the circuit court did not err by dismissing the intentional-infliction-of-emotional-distress claim.

> C.    *Whether the claim for wrongful termination was properly*
> *dismissed.*

¶28.    The circuit court also dismissed Spiers's claim that she was wrongfully terminated. Spiers argues that the circuit court erred because public policy should afford her an exception to Mississippi's employment-at-will doctrine. OGC and the Creditor Companies assert that no such exception should be allowed. We find the circuit court did not err by dismissing the wrongful-termination claim.

14

¶29.   "Mississippi has followed the common-law rule of at-will employment for more than 150 years." *Swindol v. Aurora Flight Scis. Corp.*, 194 So. 3d 847, 849 (Miss. 2016) (citing *Kelly v. Miss. Valley Gas Co.*, 397 So. 2d 874, 874-75 (Miss. 1981)).   Under this rule, "absent an employment contract expressly providing to the contrary, an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible."  *Id.* at 850 (internal quotation marks omitted) (quoting *McArn v. Allied Bruce-Terminix Co., Inc.*, 626 So. 2d 603, 606 (Miss. 1993)).

¶30.   This Court has recognized public policy exceptions to the employment at-will doctrine in only two "narrow" circumstances.  *Thomas*, 299 So. 3d at 757 (quoting *McArn*, 626 So. 2d at 607).  Every other time an exception has been proposed, this Court has "deferred to the legislative process to create exceptions to the at-will doctrine."  *Id.* at 758 (citing *Swindol*, 194 So. 3d at 852).  The public policy exceptions that have been adopted are:

> (1) an employee who refuses to participate in an illegal act . . . shall not be barred by the common law rule of employment at will from bringing an action in tort for damages against his employer; [and]
>
> (2) an employee who is discharged for reporting illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer.

*Id.* n.3 (alterations in original) (quoting *McArn*, 626 So. 2d at 607).

¶31.   Spiers relies on article 7, section 191, of the Mississippi Constitution and Mississippi Code Section 79-1-9 (Rev. 2013) to support her argument.  The Mississippi Constitution provides, in relevant part, that "[t]he legislature shall provide for the protection of the

employees of all corporations doing business in this state from interference with their social, civil, or political rights by said corporation, their agents or employees." Miss. Const. art. 7, § 191. Additionally, the Mississippi Code provides, in relevant part, that "[a]ny corporation doing business in this state shall be liable to a penalty of two hundred fifty dollars ($250.00) for every unlawful interference with the social, civil, or political rights of any its . . . employees[.]" Miss. Code Ann. § 79-1-9 (Rev. 2013). Spiers argues that, based upon these authorities, this Court should adopt a new public-policy exception. The constitutional provision, however, is not self executing because it merely provides power to the legislature to act. Miss. Const. art. 7, § 191. Further, the statutory provision is a penalty provision that provides only an enforcement mechanism to use when an actual interference does occur. Miss. Code Ann. § 79-1-9 (Rev. 2015). It does not provide Spiers a basis for her requested extension of *McArn*.

¶32. Spiers also makes an additional argument under *Swindol*. *Swindol* involved a lawsuit brought by a former employee against the former employer when the employee was terminated for having a firearm on company property. 194 So. 3d at 848. There, the employee alleged wrongful termination under Mississippi Code Section 45-9-55 (Rev. 2015). *Id.* Indeed, the Court agreed with the employee and held that "we find that the Legislature has declared it 'legally impermissible' for an employer to terminate an employee for having a firearm inside his locked vehicle on company property." *Id.* at 852-53.

¶33. Spiers relies on *Swindol* to argue that, if termination based on having a firearm is "legally impermissible," then termination based on being pregnant should be as well. Spiers,

however, misses the point. The Court *itself* did not "declare it 'legally impermissible' for an employer to terminate an employee for having a firearm inside his locked vehicle on company property." *Id.* Rather, as noted in **Swindol**, it was *the legislature* that made that declaration. *Id.* Therefore, we conclude that it is the legislature, and not this Court, that must make such a declaration here.[6]

¶34.    Apart from **McArn**, this Court has repeatedly denied requests to create a new public policy exception to the employment at-will doctrine. *E.g.*, *id.* at 852; **Kelly**, 397 So. 2d at 876. Recently, this Court rejected such a request in **Thomas**, 299 So. 3d 752. There, former employees brought an action for wrongful termination, among other things, against their former employer allegedly based on age and gender discrimination. *Id.* at 754. The employees asked for a public-policy exception to the employment-at-will doctrine after failing to properly pursue their claims under federal law, i.e. Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 (2012), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634 (2012). *Id.* at 757. After considering their request, we held that

> Terminations motivated by sex and age discrimination have already

---

[6] The Mississippi Legislature has repeatedly declined to enact pregnancy discrimination laws. *See* Mississippi Civil Rights Act, H.B. 1345, Reg. Sess. (Miss. 2019) (died in committee on February 5, 2019); Mississippi Pregnant Workers Fairness Act, S.B. 2148, Reg. Sess (Miss. 2020) (died in committee on March 3, 2020); Mississippi Civil Rights Act, H.B. 806, Reg. Sess. (Miss. 2021) (died in committee February 2, 2021); Mississippi Civil Rights Act, S.B. 2089, Reg. Sess. (Miss. 2021) (died in committee February 2, 2021). As one failed bill notes, "Mississippi historically has no workplace laws to protect pregnant women from being forced out or fired when they need only a simple, reasonable accommodation in order stay on the job." Mississippi Pregnant Workers Fairness Act, S.B. 2148, Reg. Sess., § 2 (Miss. 2020).

17

been "independently declared legally impermissible" under Title VII and the ADEA. *McArn*, 626 So. 2d at 606. . . . For this reason, we decline to grant their request to judicially create a common-law cause of action—or an exception to an already existing exception—advanced seemingly to skirt the procedural requirements of their statutory cause of action.

*Thomas*, 299 So. 3d at 758.

¶35. Here, as in *Thomas*, we also decline to grant Spiers's request because "there is no void necessitating this Court 'judicially graft another exception to the employment at-will-doctrine' because exceptions for sex . . . discrimination already exist." *Id.* (quoting *Swindol*, 194 So. 3d at 852). If the legislature wishes to amend the employment-at-will doctrine, it may do so, but we will not usurp that role. *Id.* Therefore, we conclude that the circuit court did not err by dismissing Spiers's claim for wrongful termination.

## CONCLUSION

¶36. We hold that the circuit court abused its discretion by denying Spiers leave to amend her complaint. The circuit court, however, did not err by dismissing Spiers's state-law claims. Therefore, we affirm the dismissal of the Circuit Court of Lamar County as to the state-law claims, but we reverse the decision of the circuit court denying Spiers leave to amend her complaint, and we remand this case for further proceedings.

¶37. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**RANDOLPH, C.J., MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. KING, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KITCHENS, P.J., AND COLEMAN, J.**

**KING, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶38. I agree that the circuit court erred by denying Brittany Spiers's motion for leave to

18

amend her complaint. Yet because Spiers's supervisor at Oak Grove Credit, LLC, made extreme and outrageous comments regarding Spiers's pregnancy that cannot be tolerated in a civilized society, I strongly disagree with the majority's finding that the circuit court properly dismissed Spiers's claim for intentional infliction of emotional distress.

¶39. "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a claim. . . . Therefore, we review de novo the denial of a motion to dismiss for failure to state a claim." *Bowden v. Young*, 120 So. 3d 971, 975 (Miss. 2013) (alteration in original) (internal quotation marks omitted) (quoting *Child.'s Med. Grp., P.A. v. Phillips*, 940 So. 2d 931, 933 (Miss. 2006)). The factual allegations of the complaint are taken as true, and the motion to dismiss should not be granted unless "it appears beyond any reasonable doubt that the non movant can prove no set of facts in support of the claim which would entitle them to relief." *Id.* (internal quotation marks omitted) (quoting *Rein v. Benchmark Constr. Co.*, 865 So. 2d 1134, 1142 (Miss. 2004)).

¶40. In order to recover in an employment dispute for a claim of intentional infliction of emotional distress, "the defendants' conduct must be wanton and willful, as well as evoke outrage or revulsion." *Collins v. City of Newton*, 240 So. 3d 1211, 1220 (Miss. 2018) (citing *Speed v. Scott*, 787 So. 2d 626, 630 (Miss. 2001)). Additionally, "[t]he severity of the acts should be such that they are atrocious and intolerable in a civilized society." *Id.* (citing *Speed*, 787 So. 2d at 630). As the United States Court of Appeals for the Fifth Circuit has stated, "'[e]xtreme and outrageous' conduct is difficult to define." *Johnson v. Merrell Dow Pharm., Inc.*, 965 F.2d 31, 33 (5th Cir. 1992). However, section 46 of the Restatement of

19

Torts provides that, "[g]enerally, the case is one in which the recitation of the facts to an average member of the community would arose his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Restatement (Second) of Torts § 46, cmt. d (Am. L. Inst. 1965).

¶41.   Here, Spiers alleged that her supervisor, Aaron McAdam, informed her that she was being terminated because she was pregnant. McAdam allegedly stated that he wanted to wait to fire her until she went on maternity leave, but the company wanted the termination to take effect before maternity leave started. Spiers was then replaced by a person who was not pregnant. Moreover, Spiers stated that McAdam had "often" referred to her pregnancy as a disease and stated that "women with children should be home instead of working." Spiers also averred that another candidate was denied employment because she was pregnant and that McAdam had stated that "we have one of you in the office. We don't need two." I would find that Spiers's allegations that her supervisor discriminated against pregnant people and often referred to pregnancy as a disease do rise to an outrageous and revulsive level and rise above a mere employment dispute.

¶42.   I disagree with the majority's determination that Oak Grove Credit's conduct amounted to a mere unactionable insult. The majority cites *Collins*, in which a family of firefighters had "essentially rel[ied] on rumors that [the mayor] was 'talking bad' about [them] without any allegations regarding the actual substance of what he said to anyone that would disparage any of the Collinses." 240 So. 3d at 1221. This Court found that the Collinses' allegations failed to "rise to the level of more than any employment dispute that

20

may have its roots in personal animosity" and did not rise to an outrageous or revulsive level. *Id.*

¶43. Oak Grove Credit's actions through its supervisor rose far above the level of personal animosity. It is true that "an employer must be able to supervise, review, criticize, demote, transfer and discipline employees[.]" *Johnson*, 965 F.2d at 34. However, this does not give an employer license to demean and harass its employees for being pregnant. This Court has quoted the Louisiana Supreme Court: "[a] plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger." *Jones v. Fluor Daniel Servs. Corp.*, 959 So. 2d 1044, 1049 (Miss. 2007) (internal quotation marks omitted) (quoting *White v. Monsanto Co.*, 585 So. 2d 1205, 1210 (La. 1991)). Spiers specifically alleged the substance of what her supervisor had said to disparage her. Spiers alleged that her supervisor had often referred to pregnancy as a disease while knowing that Spiers herself was pregnant. He stated that women with children should not work. Moreover, Spiers was not simply fired; she avers that she was fired from her position as the direct result of her pregnancy and before she went on maternity leave. Black's Law Dictionary defines outrageous conduct as "[c]onduct so extreme that it exceeds all reasonable bounds of human decency; behavior that is extremely shocking, offensive, or unfair." *Conduct*, Black's Law Dictionary (11th ed. 2019). I would find this conduct outrageous and unacceptable.

¶44. In *Jones*, the plaintiffs were all black males and employees of Fluor Daniel. 959 So. 2d at 1045. The plaintiffs brought a claim for intentional infliction of emotional distress and

21

alleged, among other things, that their supervisor had stated, "the monkeys could go to work or go to the rope." *Id.* (internal quotation marks omitted). This Court stated that the "insult coupled with an apparent reference to lynching could permit a reasonable juror to conclude that this comment was outrageous and revolting" and found that sufficient evidence existed to defeat a motion for summary judgment. *Id.* at 1049 (citing ***Richmond v. Miss. Dep't of Hum. Servs.*** 745 So. 2d 254, 262 (Miss. 1999)).

¶45.     The majority distinguishes ***Jones*** and states, "[u]nlike ***Jones***, however, Spiers's allegations involve no such threat of violence or similar conduct." Maj. Op. at ¶ 25. However, a threat of violence is not required to support a claim of intentional infliction of emotional distress. In ***Jones***, this Court also quoted the New Jersey Supreme Court: "[w]e do not hold that a single racial slur spoken by a stranger on the street could amount to extreme and outrageous conduct. But, a jury could reasonably conclude that the power dynamics of the workplace contribute to the extremity and outrageousness of the defendant's conduct." ***Jones***, 959 So. 2d at 1049 (alteration in original) (internal quotation marks omitted) (quoting ***Taylor v. Metzger***, 152 N.J. 490, 511 (1998)). Again, Spiers did not allege one single incidence of her supervisor referring to pregnancy as a disease. She alleged that this conduct occurred often and in addition to other inappropriate comments. Therefore, as in ***Jones***, I would find that a jury could reasonably conclude that Oak Grove Credit's conduct through its supervisor was outrageous.

¶46.     Taking the allegations as true, McAdam often made derogatory and offensive remarks to Spiers because of her pregnancy and fired her because of her pregnancy. Therefore, I

22

dissent from the majority's conclusion that the circuit court did not err by dismissing the intentional-infliction-of-emotional-distress claim. Instead, I would find that Spiers's allegations regarding her intentional-infliction-of-emotional-distress claim were sufficient to defeat a motion to dismiss.

**KITCHENS, P.J., AND COLEMAN, J., JOIN THIS OPINION.**